NUMBER 13-04-638-CV

 

                         COURT OF APPEALS

 

                     THIRTEENTH
DISTRICT OF TEXAS

 

                         CORPUS
CHRISTI - EDINBURG

 

FORD MOTOR COMPANY,                                                            Appellant,

 

                                                             v.                                

 

EZEQUIEL CASTILLO, INDIVIDUALLY,

MARIA DE LOS ANGELES, INDIVIDUALLY

AND AS NEXT FRIEND OF ASHLEY
CASTILLO

AND EZEQUIEL CASTILLO, JR., AND
ROSA

SILVIA MARTINEZ, INDIVIDUALLY,                                              Appellees.

 

    On
appeal from the 404th District Court of Cameron County, Texas.

 

 

                                          O
P I N I O N         

 

           Before
Chief Justice Valdez and Justices Castillo and Garza 

                                         Opinion
by Justice Garza

 

Ford Motor Company appeals a final judgment entered
against it for breach of a settlement agreement.  We affirm the judgment. 

 








Background 

Procedurally, this is an unusually-postured
case.  The Plaintiffs originally sued
Ford for products liability after a roll-over accident involving a Ford
sports-utility vehicle.[1]   A jury trial was held in Cameron
County.  While the jury was in
deliberations, the trial court received a note from the presiding juror, which
asked, AWhat is the maximum amount that can be awarded?@  The trial
court reviewed the note and then read it into the record.

Having heard the question, the parties and their
counsel commenced settlement discussions and almost immediately reached an
agreement.  They announced the agreement
to the trial court on the record:  Ford
promised to pay the Plaintiffs a confidential sum to drop their claims and to
release Ford from liability. 

The trial court recognized the parties= agreement, and the jury was brought back into the
courtroom, informed that the case had settled, and then discharged.  The trial court thanked the jurors for their
service and told them that they were free to discuss the case with counsel and
the parties if they wished to do so.  

After the jury was discharged, counsel for Ford
interviewed the jurors and learned information that made Ford reconsider the
settlement agreement.  Apparently, the
jury had not answered the charge=s two questions on liability when the note about
damages was sent out.  According to Ford,
the jury=s consideration of damagesCas demonstrated by the noteCwas improper because the charge specifically
instructed the jury to consider damages only if it first answered Ayes@ to one of the liability questions.  Ford maintained that the jury=s disregard for the instruction amounted to
misconduct.          








Ford=s information also indicated that the note was sent
by the presiding juror without the knowledge or consent of the other
jurors.  Ford suspected that there may
have been an improper outside influence on the jury.  It also came to believe that, despite the
note, the jury might have found no liability if its deliberations had not been
interrupted by the parties= settlement.  

Ford=s counsel openly contemplated fraudulent inducement
and mutual mistake as justifications for reneging on the settlement.  Ford eventually filed a motion to delay
settlement, requesting additional time to conduct discovery regarding the jury=s deliberations and the circumstances of the note
which had prompted the parties to settle. 
The motion read in part,  AFord requests that it be allowed to take discovery,
or that the Court independently undertake discovery, on the issue of outside
influence.@  Attached to
the motion were four affidavits from jurors Ford had contacted.   

At the hearing on Ford=s
motion to delay, counsel for Ford reiterated and expounded upon the request for
court-sanctioned discovery:

[I]t is to me something that should be of concern to
the Court if there was any outside influence, and it may be that nothing will
show up about it at all, but there=s only one way to find out and that=s to have either the Court do its own investigation
and or the Court allow us to bring the jurors in and have a hearing in front of
the Court and or to depose them and then come back to the Court with our
findings and make a determination as to where we go from there.

 

The trial court stated that it had reviewed the
juror affidavits submitted by Ford.  The
court also noted that it could not discern Aanything
specific@ to indicate an improper outside influence, but also
could not dismiss the possibility that Asomething could have gone wrong.@  In the trial
court=s words








[I]t does bother me that I have affidavits here, you
know, that there are suggestions, not anything specific, but the fact that . .
. these affidavits are here . . . does bother me. . . [The jurors] do have a
right to talk to the lawyers if they want to talk to the lawyers.   They have a right to make an affidavit if
they want to make an affidavit. . . .

 

[T]he affidavits [submitted by Ford] . . . are
proper and I think that . . . [they are] sufficient . . . to apprise the Court
of something that could have gone wrong.

 

The trial court asked for case law on the relief
requested in Ford=s motion to delay:

The Court:                            Now,
. . . I want you to tell me now if there is any case similar that you all know
about . . . . 

 

Counsel for Plaintiffs:       Not from
the plaintiffs, Your Honor. . . .

 

Counsel for Ford:              Your Honor, the
answer to that is I don=t.  And I
think that what we need to look at if the Court can give us an opportunity to
do some further research into that and see. 
Look outside the State of Texas because inside the State of Texas there=s nothing, but outside . . . Texas if we get a
chance to look at it we may be able [to] find something that addresses this
same situation.  

 

The trial court ultimately denied Ford=s motion to delay but nevertheless encouraged Ford
to conduct its own investigation:

The Court:                            I=ve read the affidavits[.] [T]hey don=t tell me anything[,] only that there could have
been something[,] and I=m not going to be the first judge to do this and
disturb the jury . . . .   I just don=t find any good reason . . . to do that and I=ll tell you right now.  If I would have had something specific here,
a lot of you guys would have been in trouble if it did happen . . . .   I can=t do it without any authority and so you all follow
the rules you all need to follow, do whatever you need to do . . . .                                         

 








After the hearing, Ford continued its refusal to
honor the settlement agreement. 
Apparently following the trial court=s
recommendation, Ford also continued its independent investigation into the jury=s deliberations. 


Eventually, the Plaintiffs filed a motion to enforce
the settlement agreement.  At a hearing
on the motion, counsel for Ford assured the trial court that, despite its prior
refusals, Ford would now pay the settlement amount.  Counsel advised the court that Ford=s performance would be delayed by two weeks because
Ford needed to draft documents for the parties to execute which would release
Ford from the case.  Counsel did not
reurge Ford=s previous request for further discovery.  In fact, counsel assured the trial court that
Ford would pay the settlement amount, thus leaving the impression that no
further discovery would be necessary.  In
counsel=s words, AYour Honor, we have no problem to - - in dealing
with this.@  








The court granted Ford=s
request for additional time and stated that performance would be excused for
two weeks so that counsel for Ford could draw up release documents for the
parties to execute.  The relief requested
in the Plaintiffs= motion to enforce settlement was otherwise
granted.  Ford was directed to deposit
the settlement amount into a qualified settlement fund as soon as the release
documents were executed.        Despite counsel=s assurances, Ford subsequently reneged and reurged
its grounds for avoiding the settlement agreement.  It filed a motion asking the trial court to
set aside the settlement agreement and to grant a new trial, or alternatively,
to declare a mistrial based upon juror misconduct.  Attached to the motion were transcripts of
interviews a private investigator had conducted with ten of the twelve jurors
on behalf of Ford.  There was also an
affidavit from the private investigator. 
According to Ford=s motion to set aside the settlement agreement, the
relevant facts were Awithout dispute.@  Ford also argued that, as a matter of law,
the attached evidence established juror misconduct and the affirmative defense
of mutual mistake.  

The Plaintiffs filed a response to the motion,
pointing out, among other things, counsel=s prior assurances that Ford had Ano problem@ with the settlement agreement. 

 In a written
order, the trial court struck the evidence attached to Ford=s motion.  The
court found that Ford had not made a showing of juror misconduct or outside
influence.  It also found that there was no
evidence of mutual mistake or other grounds to vacate or rescind the
settlement.  The court denied the motion
and noted that its Aprevious orders to enforce the settlement and to
require defendant to deposit settlement funds into a qualified settlement fund
and to establish qualified settlement fund remain in effect.@ 

The Plaintiffs then filed a motion for summary
judgment for breach of contract.  Ford
filed a response to the motion, arguing, among other things, that the
Plaintiffs could not prevail on a motion for summary judgment without amending
their pleadings to assert a cause of action for breach of contract.  Ford also maintained that it would be an
abuse of discretion to allow the Plaintiffs to amend their pleadings
post-trial.  According to Ford, APlaintiffs= only recourse is to bring a separate lawsuit for
breach of contract.@  

Without holding a hearing, the trial court issued a
written order granting the Plaintiffs= motion for summary judgment.  A final judgment was then entered against
Ford for the settlement amount, attorney=s fees, and court costs.








Ford now raises three issues on appeal:  (1) the trial court erred by not treating the
Plaintiffs= request for enforcement of the settlement agreement
as a claim for breach of contract, subject to the same procedures and
requirements normally applied to such a claim; (2) the trial court erred by
denying Ford the opportunity to conduct discovery before it summarily enforced
the settlement agreement; and (3) the trial court erred by sustaining the
Plaintiffs= objections to the four juror affidavits attached to
its motion to delay.[2]  We overrule these issues and affirm the
judgment of the trial court.   

I. Action on Settlement Agreement

In its first issue, Ford argues that the trial court
erred by failing to treat judicial enforcement of the settlement agreement as
an ordinary claim for breach of contract:

The simple threshold point is that the plaintiffs= complaint about Ford=s
alleged breach of this settlement agreement is no different from any other
claim for breach of contract.  There are
established procedures under which such claims are resolved.  Those procedures include pleading the claim,
conducting discovery to gather evidence, and then submitting disputed questions
of fact to the jury or court at trial. 
None of those procedures were observed here; all of them were
short-circuited.  That is not right.  

 

Brief of Appellant, p. 24.  Ford=s appellate brief spells out specific disadvantages
imposed on Ford by what it argues was the trial court=s erroneous treatment of the case:

The plaintiffs never filed an amended petition to
assert a cause of action for breach of contract; Ford was denied discovery to
support its defenses, and there was no trial at which contested fact issues
could be submitted to a judge or jury. . . . That was error.   

 

Brief of Appellant, p. 27.

A.  Agreed
Judgment vs. Judgment Enforcing Binding Contract








As a preliminary matter, we disagree with Ford=s contention that this case was treated as something
other than an action for breach of contract. 
To be sure, the case began as a products liability suit; however, it
became a matter of contract law when the parties reached a settlement in open
court.  See Tex. R. Civ. P. 11 (governing
agreements between attorneys or parties touching any suit pending); Padilla
v. LaFrance, 907 S.W.2d 454, 461B62 (Tex. 1995) (equating action to enforce
settlement to breach of contract action). 
When the jury was dismissed and Ford refused to pay the settlement, the
case became a contractual dispute.  See Tex.
R. Civ. P. 11; LaFrance, 907 S.W.2d at 461B62.      We
understand Ford=s argument to be that the trial court abused its
discretion by rendering an agreed judgment. 
Ford raised this contention before the trial court, insisting that no
judgment could be rendered for the settlement amount because Ford had withdrawn
its consent to settle.  

We agree that a judgment based upon an agreement of
the attorneys cannot be rendered by a court if the consent of one of the
parties thereto is wanting.  Quintero
v. Jim Walter Homes, Inc., 654 S.W.2d 442, 444 (Tex. 1983); Burnaman v.
Heaton, 240 S.W.2d 288, 291 (Tex. 1951). 
The power to render an agreed judgment depends upon the Asubstance of the consent@ at the time judgment is rendered.  Quintero, 654 S.W.2d at 444; Burnaman,
240 S.W.2d at 291.  Therefore, a party
has the right to revoke his or her consent at any time before the rendition of
judgment.  See Samples Exterminators
v. Samples, 640 S.W.2d 873, 874 (Tex. 1982).  If a trial court has knowledge that one of
the parties to a suit does not consent to a judgment, the trial court should
refuse to sanction the agreement by making it the judgment of the court. Quintero,
654 S.W.2d at 444; Burnaman, 240 S.W.2d at 291.  








In light of these principles, Ford contends the
trial court could not have properly entered a final judgment after Ford
withdrew its consent.  We disagree.  Ford=s argument concerns the trial court=s entry of an agreed judgment.  There is no question that Ford withdrew its
consent prior to the entry of judgment in this case.  There is thus no question that, under the
circumstances, the entry of an agreed judgment would have been an abuse of
discretion.  See Quintero, 654
S.W.2d at 444; Burnaman, 240 S.W.2d at 291.  The case at bar, however, does not involve
the entry of an agreed judgment.  The
trial court entered a judgment enforcing a settlement agreement, not an agreed
judgment.  

The Texas Supreme Court has previously addressed
this distinction.  See LaFrance,
907 S.W.2d at 461B62.  In LaFrance,
it explained that the parties had confused the requirements for an agreed judgment
with those for an enforceable settlement agreement.  Id. 
Although a court cannot render a valid agreed judgment absent consent at
the time it is rendered, this does not preclude the court, after proper notice
and hearing, from enforcing a settlement agreement complying with rule 11 even
though one side no longer consents to the settlement.  Id. 
The judgment in the latter case is not an agreed judgment, but rather a
judgment enforcing a binding contract.  Id.
 

B. 
Established Procedures 








This brings us to Ford=s
points about the trial court=s failure to follow Aestablished
procedures.@  As Ford
points out, even in actions to enforce settlement agreements, parties have the
right to be confronted by appropriate pleadings, assert defenses, conduct
discovery, and submit contested fact issues to a judge or jury.  Avary v. Bank of Am., N.A., 72 S.W.3d
779, 799 (Tex. App.CDallas 2002, pet. denied).  An action to enforce a settlement agreement,
where consent is withdrawn, must be based on proper pleading and proof.  LaFrance, 907 S.W.2d at 462; Bayway
Servs. v. Ameri‑Build Constr., 106 S.W.3d 156, 160 (Tex. App.CHouston [1st Dist.] 2003,  no pet.). 
That is, neither the civil practice and remedies code nor the rules of
civil procedure creates a separate standard for enforcing disputed settlement
agreements that bypasses the common law pleading and proof requirements.  See Mantas v. Fifth Court of Appeals,
925 S.W.2d 656, 658 n.2 (Tex. 1996) (orig. proceeding); Cadle Co. v. Castle,
913 S.W.2d 627, 632 (Tex. App.CDallas 1995, writ denied).

1. 
Confrontation by Appropriate Pleadings 

One of the main complaints raised on appeal by Ford
is that the Plaintiffs never filed an amended petition asserting a cause of
action for breach of contract.  Ford
maintains that in the absence of such a pleading, the trial court had no basis
to render a judgment for breach of contract. 
In response, the Plaintiffs contend that their motion to enforce
settlement was a sufficient pleading. 

We agree with the Plaintiffs.  In other factually-similar cases, courts have
held that a motion to enforce settlement is a sufficient pleading.  Neasbitt v. Warren, 105 S.W.3d 113,
117B18 (Tex. App.CFort Worth 2003, no pet.); Browning v. Holloway,
620 S.W.2d 611, 615 (Tex. Civ. App.CDallas 1981, writ ref=d
n.r.e.).  These holdings reflect the
essential function of legal pleadings, which is to give adversary parties
notice of each other=s claims and defenses, as well as notice of the
relief sought.  See Perez v.
Briercroft Serv. Corp., 809 S.W.2d 216, 218 (Tex. 1991). 








We have no doubt that Ford had adequate notice of
the Plaintiffs= claims.  Ford=s motion to delay to settlement was filed well
before the Plaintiffs commenced an action for judicial enforcement.  Although the Plaintiffs asserted no claims
against Ford at the time, Ford=s motion to delay nevertheless sought to conduct
discovery, apparently in anticipation of an action for breach of contract.  At that point in time, if not sooner, Ford=s conduct and the relief it sought demonstrate that
Ford anticipated a lawsuit and that Ford was well aware of the claims and
relief the Plaintiffs would seek if the parties= did
not resolve their dispute. 

Ford=s actual notice of the Plaintiffs= claim is also demonstrated by its motion to set
aside the settlement agreement, which was filed shortly after the Plaintiffs= motion to enforce to settlement.  Not only did Ford=s motion to set aside acknowledge the claim for
relief stated in the Plaintiffs= motion to enforce, it also set forth juror
misconduct and mutual mistake as defenses to breach of contract.  Ford even provided evidence to support its
position that Ford Awas entitled to judgment as a matter of law.@ 

Given these facts, we conclude that the Plaintiffs= motion to enforce settlement was a sufficient
pleading and that the trial court did not err by allowing the Plaintiffs to
pursue judicial enforcement of the settlement agreement.  See Neasbitt, 105 S.W.3d at 117B18; Browning, 620 S.W.2d at 615.  

In reaching this holding, we find it noteworthy that
Ford made the following argument in its response to the Plaintiffs= motion for summary judgment: 

[A] post-trial amendment that asserts a new cause of
action is prejudicial on its face and should not be permitted.  Plaintiffs have never before asserted any
claim for breach of contract, much less a claim for breach of this alleged
contract, so their claim will be new and consequently prejudicial. . .   Plaintiffs should not be permitted to bring
this claim in the same suit.  Due to the
prejudice that would otherwise result, Plaintiffs only recourse is to bring a separate
lawsuit for breach of contract and to then follow the traditional procedures to
assert such a claim.

 

(internal citations omitted).  








Ford=s argument in this regard is plainly contrary to
what the Texas Supreme Court has instructed:

Where the settlement dispute arises while the trial
court has jurisdiction over the underlying action, a claim to enforce the
settlement agreement should, if possible, be asserted in that court under the
original cause number.  However, where
the dispute arises while the underlying action is on appeal, as in this case,
the party seeking enforcement must file a separate breach of contract action.

 

Mantas,
925 S.W.2d at 658.  

In this case, there is no question that the trial
court still had jurisdiction over the underlying action.  Therefore, the claim to enforce the
settlement agreement was properly asserted in the same court under the original
cause number.  See id.  

Finally, in a twist that we can only call strange,
Ford=s reply brief in this appeal argues that the
foregoing issue is not actually disputed:

[P]laintiffs devote portions of their brief to
refuting complaints that Ford does not even make in this Court, but that
plaintiffs apparently wish they did.  The
Astraw men@ that plaintiffs thereby attack include, for
example, the contention that plaintiffs had to file a separate lawsuit to
enforce the settlement agreement, and that they did not file a formal amended
petition to assert that claim.  Ford did
make both of those arguments below.  But
it does not make either complaint here, since it would rather focus on the core
concerning the denial of its requested discovery.

 

Reply Brief of Appellant, p.10.  

To put it mildly, we are surprised by Ford=s concession that its first issue raises Astraw men@ or dummy arguments. 
Although this about-face seems unusual, it reinforces our conclusion
that Ford=s argument is without merit.     

2. 
Opportunity to Assert Defenses

Another part of Ford=s
complaint about the trial court=s failure to follow Aestablished
procedures@ is that Ford was denied Athe opportunity to plead and prove its affirmative
defense of mutual mistake.@  We find this
complaint unfounded. 








At the outset, we question what Ford means by Aplead and prove.@  After all, Ford did file a motion to set
aside the settlement, with supporting evidence, and argued, AAll of the elements to invoke the doctrine of mutual
mistake are uncontested.@  Ford
maintained that the facts were Awithout dispute@ and that it had established mutual mistake Aas a matter of law.@  The trial court disagreed and issued a
written order stating that Ford had produced no evidence of mutual mistake, a
ruling Ford does not challenge.     

We are at a loss to understand how Ford can complain
about not having an opportunity to Aplead and prove@ mutual mistake when it not only filed a motion to
set aside the settlement, complete with supporting evidence, but also got a
direct ruling by the trial court, which it does not challenge on appeal.

3. 
Opportunity for Discovery 

Ford also argues that the trial court failed to
afford it a reasonable opportunity to conduct discovery.  We disagree with Ford on this point and note
that it is actually the central complaint raised in Ford=s second issue. 
The merits of Ford=s contention and our reasons for disagreement are
fully discussed below in our analysis of Ford=s
second issue. 

4.  
Submission of Disputed Facts to Jury or Court








Finally, Ford contends that it was denied its basic
right to have Adisputed questions of fact [submitted] to the jury
or court at trial.@  Contentions
such as thisCthat genuine issues of material fact made summary
judgment improperCare frequently raised on appeal and the burdens they
entail are quite familiar.  In general,
complaining parties who prevail on such challenges have (1) adequately briefed
their grounds for reversal by providing a clear and concise argument for the
contentions made, with appropriate citations to authorities and to the record, see
Tex. R. App. P. 38.1(h), and
(2) demonstrated that the same grounds for reversal were expressly presented to
the trial court by written motion, answer, or other response, see Tex. R. Civ. P. 166a(c).    

In this case, Ford has not provided a clear and
concise argument for its contention that facts issues made summary judgment
improper.  Ford=s brief does not identify the fact issues that
should have been submitted to the trier of fact.

In the section of Ford=s
brief that contains its ASummary of the Argument,@ Ford clarifies that the central issue on appeal is
Ford=s right to conduct discovery, not whether it
produced sufficient evidence to defeat the Plaintiffs= motion for summary judgment:

The question at the heart of this appeal is not
whether Ford was able to present sufficient evidence of juror misconduct, or
outside influence, or fraudulent inducement, or some other ground for defeating
the Plaintiffs= claim for breach of this settlement agreement.  Rather, the question is whether Ford should
have been allowed to conduct discovery to find out whether there was
sufficient evidence of juror misconduct, or outside influence, or fraudulent
inducement, that would have made that agreement unenforceable.   

 

Brief of Appellant, p.23 (emphasis in original).                             

In light of this statement and given that Ford has
not adequately briefed any challenge to the summary judgment based on the
existence of fact issues, we conclude that this contention is also without
merit. 

Having reviewed all of Ford=s contentions regarding the trial court=s failure to follow established procedures, and
having found them to each be without merit, we overrule Ford=s issue in its entirety.          

II. 
Opportunity for Discovery








In its second issue, Ford argues that the trial
court erred by denying it the opportunity to conduct discovery before
submission of the Plaintiffs= motion for summary judgment.        

If a party has not had an adequate opportunity for
discovery before a summary judgment hearing, it must file either an affidavit
explaining the need for further discovery or a verified motion for
continuance.  See Tex. R. Civ. P. 166a(g), 251, 252; Tenneco
Inc. v. Enterprise Prods. Co., 925 S.W.2d 640, 647 (Tex. 1996); Gabaldon
v. Gen. Motors Corp., 876 S.W.2d 367, 369 (Tex. App.CEl Paso 1993, no writ); Watson v. Godwin, 425
S.W.2d 424, 430 (Tex. Civ. App.CAmarillo 1968, writ ref=d n.r.e.). 
Ford did neither.  

In counsel=s words:

Ford did not request a continuance, and it
does not complain on appeal that a continuance was not granted.  Indeed, a continuance of the hearing on
plaintiffs= motion for summary judgment would not have done
Ford precisely no good [sic] whatsoever, since the trial court had already
refused to allow Ford to conduct the discovery it wished to undertake.  It is that denial of discovery about which
Ford complains, not the trial court=s failure to postpone the hearing.  

 

Reply Brief of Appellant, p.5 (emphasis in original).     








A party must file either an affidavit explaining the
need for further discovery or a verified motion for continuance in order to
complain that it had an inadequate opportunity for discovery.   See Stangel v. Perkins, 87 S.W.3d
706, 709 (Tex. App.CDallas 2002, no pet.).  Otherwise, the error is waived.  Green v. City of Friendswood, 22
S.W.3d 588, 594 (Tex. App.CHouston [14th Dist.] 2000, pet. denied).   To the extent Ford argues it had an
inadequate opportunity for discovery before the submission of the Plaintiffs= motion for 
summary judgment, its second issue has been waived.[3]


III. Order on Motion to Delay

In the interest of addressing every issue fairly
raised and necessary for final disposition of the appeal, see Tex. R. App. P. 47.1, we acknowledge
that Ford=s second issue also appears to include a sub-issue
attacking the trial court=s denial of Ford=s
motion to delay, which had requested court-sanctioned discovery into the
circumstances of the jury note that had prompted the parties to settle.  Ford contends that the ruling was erroneous
because there were no legal bars to the requested discovery.  In counsel=s
words: 

The question at the heart of this appeal is not
whether Ford was able to present sufficient evidence of juror misconduct, or
outside influence, or fraudulent inducement, or some other ground for defeating
the Plaintiffs= claim for breach of this settlement agreement.  Rather, the question is whether Ford should
have been allowed to conduct discovery to find out whether there was sufficient
evidence of juror misconduct, or outside influence, or fraudulent inducement,
that would have made that agreement unenforceable.  

 

Brief of Appellant, p. 23.[4]   








We agree that the motion to delay requested specific
discovery into the circumstances of the note. 
Although the trial court denied the motion to delay, we believe that no
error has been preserved for appellate review. 
Even if error were preserved, we would conclude that such error was not
reversible.  

A.  Ford Did
Not Get an Adverse Ruling on Discovery Request 

As a preliminary matter, we are unpersuaded that the
trial court=s ruling on the motion to delay actually foreclosed
the discovery sought by Ford.  At the
hearing on the motion to delay, the trial court refused to delay the settlement
but invited counsel to investigate the matter further and to advise the court
of any information that would warrant further action:

[I]f there=s a concern[,] as a lawyer, I would go and find out
if there=s anything, and I would go and find out what
happened, if anything. . . . But it seems to me that your law firm . . .
[referring to counsel for Ford] has already kind of started an investigation
which is something I would do, guys, if I had this concern. . . .   And I mentioned before, you know, I would be
setting dangerous precedent because I=ve never been aware of [or] know of any case law
that deals with this situation. . . . 
And I guess what I=m indicating, I=ve read the affidavits [and] they don=t tell me anything [- - ] only that there could have
been something and I=m not going to be the first judge to do this. . .
.  I can=t do
it without any authority and so you follow the rules you all need to follow, do
whatever you need to do . . . .  I really
don=t want to delay this.  I=m not going to delay it.  You all go through the process you need to go
[through] and [if] you find that it=s necessary to go through the process then we=ll deal witness [sic].

 

This ruling appears to have had the effect of
actually granting Ford=s request to interview the jurors Aand come back to the Court with our findings and
make a determination as to where we go from there.@   After all,
the trial court had encouraged Ford to conduct its own investigation and to
inform the trial court if it became necessary to Ago
through the process,@ by which the trial court apparently meant a trial
or some type of full-blown evidentiary hearing.








Although Ford=s brief does not admit as much, this is exactly what
Ford did.  It hired a private
investigator to interview the jurors. 
Ten of the interviews were recorded and transcribed, and they were
ultimately submitted to the trial court as Auncontested@ evidence of juror misconduct and mutual
mistake.  Ford was even able to contact
the jury foreperson who was apparently Auncooperative.@

In deciding Awhether Ford should have been allowed to conduct
discovery,@ as Ford frames its second issue, we cannot ignore
the evidence Ford actually collected and submitted to the trial court for
review.  See K.C. Roofing Co. v.
Abundis, 940 S.W.2d 375, 379B80 (Tex. App.CSan Antonio 1997, writ denied).   Nor can we dismiss the significant overlap
between the evidence Ford submitted to the trial court and the evidence Ford
sought to collect through court-sanctioned discovery.  These considerations indicate that the trial
court=s denial of Ford=s
motion to delay did not compromise Ford=s ability to collect the evidence it had sought to
discover.

In the end, the only notable evidence Ford was
unable to collect was a statement from the jury foreperson.  Ford concedes that the trial court did not
prevent Ford from contacting the jury foreperson, from taking her statement, or
from collecting an affidavit from her. 
She was simply Auncooperative,@ to use Ford=s description of what happened.  In the words of Ford=s attorney

It is, to put it gently, rather naive to suggest
that . . . [the jury foreperson] might gleefully provide an affidavit
announcing that this was her scheme.  It
is even less plausible to suggest that she would openly admit that she employed
this stratagem at the behest of someone outside the jury, perhaps even someone
connected with the Plaintiffs= camp.

Reply Brief of Appellant, p. 6B7.  








For these reasons, we believe that the trial court=s ruling did not actually foreclose or deny the
requested discovery.  The ruling allowed
Ford to collect virtually all the evidence it sought to discover and left open
the possibility of a full-blown evidentiary hearing to collect further evidence
if necessary.  We are accordingly
inclined to overrule Ford=s second issue on the grounds that Ford failed to
get an adverse ruling from the trial court. 
See Tex. R. App. P.
33.1(a).  

B.  Waiver of
Any Adverse Discovery Ruling 

We would reach a similar disposition even if the
trial court had actually denied the requested discovery, as Ford argues.  We cannot ignore the mixed messages Ford gave
to the trial court about its need for further discovery.  Ford initially made a clear request for
discovery in its motion to delay.  Ford
wanted to collect evidence from the jurors. 
After the motion to delay was denied, however, Ford made very inconsistent
statements to the trial court, statements which could only mean that further
discovery was unnecessary. 

For instance, after the motion to delay was denied,
counsel for Ford inexplicably assured the trial court that, despite prior
objections, Ford would pay the settlement amount rather than contest whether
the settlement was enforceable.  These
actions were obviously inconsistent with Ford=s
earlier request for discovery.  Nor can
we say that a request for further discovery was inherent in counsel=s statements or was otherwise apparent from the
context in which the statement were made. 
See Tex. R. App. P.
33.1(a).  Both the substance and the
context of counsel=s assurances to the trial court affirmatively
indicate that Ford had relinquished its request for discovery.  








We have great difficulty reconciling these
statements, especially because they were made at the hearing on the Plaintiffs= motion to enforce settlement.  Likewise, we cannot discount their effect
because they affirmatively indicate that additional discovery would no longer
be necessary because Ford was no longer attempting to avoid the agreement.  

Shortly after the statements were made, Ford changed
its position yet again.  It filed a
motion to set aside the settlement agreement. 
Even in this motion, however, no further discovery was requested.  Ford argued, AThe
facts relevant to this motion are supported by the attached proof, and are
without dispute.@  Instead of
arguing that additional discovery was necessary, Ford argued, AAll of the elements to invoke the doctrine of mutual
mistake are uncontested.@  Again, the
substance and the context of Ford=s statements suggest that it no longer sought
further discovery.  

Ford attached supporting evidence to its motion to
set aside the settlement, a fact which also indicates that Ford no longer
required further discovery.  Ford
attached recorded statements and transcripts of recorded interviews from ten of
the twelve jurors, the same evidence that Ford had requested time to collect in
its motion to delay.  No statements from
the jury foreperson were attached to the motion, but there was also no indication
in the motion that Ford needed to obtain a statement from the foreperson or
that it even wished to do so.

It was not until two and a half months after the
motion to delay was denied, when the Plaintiffs filed a motion for summary
judgment, that Ford reurged a general complaint about not having Aan opportunity to conduct discovery.@  At this
point, Ford sought discovery Ato determine the motivation of the presiding juror=s actions and any outside influences that possibly
swayed her@ on the grounds that it Amay provide further proof that she committed juror
misconduct.@ 








Although Ford=s response clearly requested further discovery, we
can hardly say that Ford made this request consistently or continuously from
the point at which its motion to delay settlement was denied.   After the motion to delay was denied, Ford
promised the trial court that it would pay the settlement amount.  Then, Ford produced virtually the same
evidence that was the subject of the prior discovery request and argued that
all material facts were without dispute.  
Ford never filed a new motion reasserting its request for additional
discovery.  

We believe that these actions had the effect of
withdrawing Ford=s prior request for discovery, as we cannot conclude
that a request for discovery was fairly before the trial court or apparent from
the context.  See Tex. R. App. P. 33.1(a)(1)(A); see
also In re Prudential Ins. Co. of Am., 148 S.W.3d 124, 130 (Tex. 2004)
(orig. proceeding); Motor Vehicle Bd. of the Tex. DOT v. El Paso Indep.
Auto. Dealers Ass., Inc., 1 S.W.3d 108, 111 (Tex. 1999) (AA party=s express renunciation of a known right can
establish waiver. Silence or inaction, for so long a period as to show an
intention to yield the known right, is also enough to prove waiver.@).    

This leaves the request for further discovery that
Ford made in its response to the Plaintiffs=
motion for summary judgment.  As noted
above, a party requesting additional discovery to oppose a motion for summary
judgment must file either an affidavit explaining the need for further
discovery or a verified motion for continuance. 
Stangel, 87 S.W.3d at 709; Green, 22 S.W.3d at 594.   Ford did neither of these things.  Accordingly, the issue has been waived.  

C.  Harmless
Error








Even if error had been preserved for appellate
review and not waived, we would still have no basis for reversing the
judgment.  Although the trial court
denied the motion to delay, Ford was ultimately able to conduct its own
investigation into the circumstances of the jury=s
note.  Ford contacted at least eleven of
the twelve jurors, including the foreperson. 
Ten of the eleven jurors agreed to be interviewed by a private
investigator working for Ford.  Evidence
generated by these interviews was submitted to the trial court for review.  Ford even filed a motion to set aside the
settlement agreement, in which it argued that the evidence established juror
misconduct and mutual mistake as a matter of law.  

Given the evidence and Ford=s arguments, we are at a loss to understand how the
trial court=s error Aprobably led to the rendition of an improper
judgment@ or Aprobably prevented appellant from properly
presenting the case to the court of appeals.@  See Tex.
R. App. P. 44.1(a).  Ford has not
identified what specific evidence, or even what general type of evidence, it
would have added to its defense if the trial court had granted its motion to
delay.  

The only conceivable addition would be a statement
from the jury foreperson; however, it is difficult to understand how the
absence of a statement from the jury foreperson could have Aprobably led to the rendition of an improper
judgment@ when Ford concedes that the foreperson would not
have added anything to its case. See Reply
Brief of Appellant, p. 6B7. 

For these reasons, we conclude that the trial court=s error, if any, was harmless.  See Tex.
R. App. P. 44.1(a).  Ford=s second issue is overruled.        

IV.  Objections to Affidavits








In its third issue, Ford argues that the trial court
erred by sustaining the Plaintiffs= objections to the four juror affidavits referenced
in Ford=s response to the Plaintiffs= motion for summary judgment.  The four juror affidavits were originally
filed in support of Ford=s motion to delay settlement.  When the Plaintiffs moved for summary
judgment, Ford filed a response arguing that summary judgment would be improper
because of the unresolved fact issues raised by the affidavits:

The juror affidavits . . . create . . . a fact issue
as to whether Ford was improperly misled, and whether both Ford and the
Plaintiffs were mistaken as to the course of the jury deliberations, believing
that the jurors had reached the damages questions when in fact they were
strongly leaning against finding any liability at all on the part of Ford.  Such mistaken beliefs substantially affected
the settlement negotiations, and they entitle Ford to the affirmative defense
of mutual mistake. . . .  

 

There are a number of apparent and potential fact
issues relevant to the Plaintiffs= new breach of contract claim.  These include whether juror misconduct
occurred, whether Ford was improperly mislead, and whether the parties entered
into the settlement agreement under mutual mistake.  Because of these disputed issues of material
fact, summary judgment is not proper. 

 

In their reply brief, the Plaintiffs argued that the
four juror affidavits did not raise a fact issue on any potential affirmative
defense.  They also objected to the four
juror affidavits, arguing that they were inadmissible because they contained
hearsay, as well as statements which were inadmissible under rule of evidence
606 and rule of civil procedure 327(b).  Tex. R. Evid. 606, 802; Tex. R. Civ. P. 327(b).  In its order granting summary judgment, the
trial court sustained the Plaintiffs= objections and ordered the affidavits stricken from
the record.  Ford now challenges that
ruling.  








Having reviewed the record and the briefs, we find
that Ford has not shown itself entitled to appellate relief.  Issues involving the admissibility of
evidence are committed to the sound discretion of the trial court.  See Exxon Pipeline Co. v. Zwahr, 88
S.W.3d 623, 629 (Tex. 2002).  On appeal
from an adverse evidentiary ruling, the complaining party must not only
establish a clear abuse of discretion, it also needs to demonstrate how the
case turned on the particular evidence admitted or excluded.  See City of Brownsville v. Alvarado,
897 S.W.2d 750, 753B54 (Tex. 1995). 
This assists the reviewing court to determine whether the trial court=s error Aprobably led to the rendition of an improper
judgment@ or Aprobably prevented appellant from properly
presenting the case to the court of appeals.@  See Tex.
R. App. P. 44.1(a); McCraw v. Maris, 828 S.W.2d 756, 758 (Tex.
1992).

In this case, the trial court=s error, if any, would be reversible only if the
excluded evidence that actually raised a fact issue on all the elements of an
affirmative defense asserted by Ford.  See
American Petrofina v. Allen, 887 S.W.2d 829, 830 (Tex. 1994).  Ford=s appellate briefs, however, lack any discussion of
the elements of mutual mistake or fraudulent inducement or citation to any
relevant authority.  See Tex. R. App. P. 38.(h).  Ford has not argued on appeal that the
excluded affidavits raised a fact issue on the elements of either of these
affirmative defenses.  See id.  In fact, there is no argument at all in Ford=s briefs regarding how the trial court=s ruling affected the final judgment.  See id.  Ford has altogether neglected this part of
its burden. 

            Because Ford=s briefing is inadequate to demonstrate how the
trial court=s error, if any, probably led to the rendition of an
improper judgment, we overrule Ford=s third issue without deciding whether the trial
court=s ruling was actually erroneous.  See Tex.
R. App. P. 38.1(h), 44.1(a), 47.1; 
Alvarado, 897 S.W.2d at 753B54; Downen v. Tex. Gulf Shrimp Co., 846
S.W.2d 506, 512 (Tex. App.CCorpus Christi 1993, writ denied).  








The judgment is AFFIRMED. 

 

_______________________

DORI CONTRERAS GARZA,

Justice

 

Dissenting opinion by

Justice Errlinda Castillo.                                    

 

Opinion delivered and filed 

this the 8th day of June, 2006.

 











[1] 
The
Plaintiffs are Ezequiel Castillo, individually, Maria de los Angeles Castillo,
individually and as next friend for Ashley Castillo and Ezequiel Castillo, Jr.,
and Rosa Silvia Martinez, individually. 





[2] Whether this Court finds the
circumstances leading to the settlement in this case  Atroubling@ or Adiscomforting@ (Reply
Brief of Appellant, p. 3) is of no consequence as we our confined to
addressing only the issues fairly raised in Ford=s brief.  See Tex.
R. App. P. 38.1(e), 47.1.  





[3] In reaching this holding, we emphasize the provisions of rule 166a(g),
which are clearly meant to help litigants in Ford=s situation (i.e., litigants in
need of additional discovery before a summary judgment hearing):

 

When Affidavits Are Unavailable. 
Should it appear from the affidavits of a party opposing the motion that
he cannot for reasons stated present by affidavit facts essential to justify
his opposition, the court may refuse the application for judgment or may order
a continuance to permit affidavits to be obtained or depositions to be taken or
discovery to be had or may make such other order as is just.

 

Tex.
R. Civ. P. 166a(g). 





[4] Ford argues that relief under 166a(g) would have been unhelpful
because the trial court had already refused its request to conduct Adiscovery into the odd
circumstances by which it was induced to enter this settlement agreement.@ 
See Tex. R. Civ. P.
166a(g).  We disagree.  Under rule 166a(g), the trial court could
have revisited its prior ruling and ordered a continuance to permit Aaffidavits to be obtained or
depositions to be taken or discovery to be had.@ 
Id.  This is the very
relief Ford claims it was erroneously denied.