**Louis P. QUINTERO et ux., Petitioners,**

**v.**

**JIM WALTER HOMES, INC., Respondent.**

**No. C–2086.**

Supreme Court of Texas.

July 20, 1983.

Francis I. Gandy, Jr., Corpus Christi, for petitioners.

Atlas & Hall, Mike Mills, McAllen, for respondent.

BARROW, Justice.

Petitioners, Louis P. and Paula Quintero, brought this suit against respondent, Jim

Walter Homes, Inc., to recover damages under the Deceptive Trade Practices Act and the Consumer Credit Code. After a favorable judgment was rendered for the Quinteros, this cause was allegedly settled as a part of an aggregate settlement of several hundred claims against Jim Walter Homes by clients of attorney Hector Gonzalez. The trial court set aside the judgment and dismissed the cause. The Quinteros appealed and urged that they had withdrawn their consent to the entry of judgment of dismissal prior to its rendition. The court of appeals affirmed. 648 S.W.2d 746. We reverse the judgments of the courts below and remand the cause to the trial court.

Gonzalez filed this lawsuit on behalf of the Quinteros on December 1, 1978. Prior to the commencement of trial, Gonzalez referred the Quinteros' file to another attorney, Francis Gandy, to try the case for a prearranged division of attorney fees. Gonzalez' name appears on all of the pleadings, and there is no showing that the Quinteros were ever consulted regarding this referral. On May 27, 1981, Gandy secured rendition of a judgment, based on a jury verdict, whereby the Quinteros were awarded $78,385.65. In the meantime, Gonzalez negotiated an aggregate settlement with Jim Walter Homes on behalf of 349 clients, for a lump sum of $1,592,692 to be divided among his clients in accordance with a formula he devised.[1]

On June 11, 1981, before receiving notice of the judgment rendered in their favor, the Quinteros signed a release of their claim against Jim Walter Homes in Gonzalez' office. Under the formula devised by Gonzalez, the Quinteros would receive only $3,900 in cash and would have to continue paying on their note with certain deductions. The total value of their part of the settlement

was approximately $13,687. Juan Gussoni, the office manager of Gonzalez' firm, told the Quinteros that although they might receive more money if they pursued their case, it could take four to five years before they obtained anything.

On June 16, 1981, the releases from Gonzalez' clients and a joint motion to dismiss the Quinteros' case were delivered to Jim Walter Homes' attorneys in exchange for a check to Gonzalez in the sum of $1,592,697. Unaware of this settlement, Gandy mailed a certified copy of the Quinteros' judgment to Gonzalez' office on June 8, but it was not received until June 15. On June 22, Gandy mailed a copy of the judgment to the Quinteros. Upon learning of the judgment, the Quinteros notified the trial court by letter of their disapproval of the settlement and revocation of Gonzalez' authority to represent them. Although Jim Walter Homes knew the Quinteros no longer consented to the judgment of dismissal, it refused to release them from the aggregate settlement agreement. A timely motion for new trial was filed on June 26, 1981 by Jim Walter Homes on the advise of the Gonzalez firm along with the joint motion to dismiss the Quinteros' case. The motion to dismiss was signed by an attorney for Jim Walter Homes and a member of Gonzalez' firm.

On August 11, 1981, the trial court held a hearing on the motion for new trial and the motion to dismiss to determine if the Quinteros had consented to the joint motion to dismiss. Mr. Quintero testified that he did not wish to have his case dismissed and that he wished to recover under the judgment rendered on May 27, 1981. Jim Walter Homes asserted that, because Gonzalez, who was the Quinteros' attorney at the time the settlement was reached, had joined in this motion, the trial court had no alter-

---

1. We note that our disciplinary rules provide: DR 5–106. Settling Similar Claims of Clients.

    (A) A lawyer who represents two or more clients shall not make or participate in the making of an aggregate settlement of the claims of or against his clients, unless each client has consented to the settlement after being advised of the existence and nature of all the claims involved in the proposed settlement, of the total amount of the settlement, and of the participation of each person in the settlement.

    Supreme Court of Texas, Rules Governing the State Bar of Texas, art. XII, § 8 (Code of Professional Responsibility) DR 5–106 (1973).

native but to render the judgment as requested. *See* Tex.R.Civ.P. 8 and 10. After considering this testimony, the trial court impliedly set aside the $78,000 judgment rendered on the jury's verdict and rendered a judgment of dismissal.

 Our determination of this case is limited to the question of whether the trial court correctly granted the joint motion and rendered a judgment of dismissal. A similar situation was before this Court in *Burnaman v. Heaton,* 150 Tex. 333, 240 S.W.2d 288 (1951). We stated that a judgment based upon an agreement of the attorneys, "cannot be rendered by a court when consent of one of the parties thereto is wanting." *Id.* at 291. The power to render an agreed judgment depends upon the "substance of the consent" at the time judgment is rendered. *Id.* at 291. Therefore, a party has the right to revoke his consent at any time before the rendition of judgment. *See Samples Exterminators v. Samples,* 640 S.W.2d 873, 874 (Tex.1982). When a trial court has knowledge that one of the parties to a suit does not consent to a judgment, the trial court should refuse to sanction the agreement by making it the judgment of the court. *Burnaman v. Heaton,* 240 S.W.2d at 291.

Here, the trial court was fully advised that the Quinteros did not consent to the joint motion to dismiss when it rendered the judgment of dismissal. Therefore, the trial court erred and the judgment of dismissal must be set aside.

Jim Walter Homes asserts that the judgment of dismissal was proper despite the fact that the Quinteros did not consent to the joint motion, because they had voluntarily entered into a settlement of their case on June 11. It relies upon the release signed by the Quinteros as evidence of the settlement's validity. The validity of the settlement agreement, however, may not be determined without proper pleadings and full resolution of the surrounding facts and circumstances. *Burnaman v. Heaton,* 240 S.W.2d at 292; *Browning v. Holloway,* 620 S.W.2d 611, 615 (Tex.Civ.App.—Dallas),

*writ ref'd, n.r.e. per curiam,* 626 S.W.2d 485 (Tex.1981).

The joint motion to dismiss was the only pleading before the court upon which the judgment of dismissal could have been rendered. Consequently, the only question before the trial court was whether all the parties consented to the judgment at the time it was rendered. Therefore, our reversal of the judgment of dismissal is without prejudice to the rights of the Jim Walter Homes in its attempt to plead and prove an enforceable settlement agreement under the release.

We reverse the judgments of the courts below and remand the cause to the trial court.