Opinion issued on October 25, 2007

















In The

Court of Appeals

For The

First District of Texas






NO. 01-06-00983-CV

____________


ST. RAPHAEL MEDICAL CLINIC, INC., Appellant


V.


MINT MEDICAL PHYSICIAN STAFFING, LP D/B/A PRIME STAFF,
Appellee






On Appeal from the County Civil Court at Law No. 1

Harris County, Texas

Trial Court Cause No. 826343





O P I N I O N

 Appellant, St. Raphael Medical Clinic, Inc. ("St. Raphael"), challenges the trial
court's judgment entered in favor of appellee, Mint Medical Physician Staffing, LP
doing business as Prime Staff ("Prime Staff"), in Prime Staff's suit against St.
Raphael for damages based on a sworn account, breach of contract, and quantum
meruit. In three issues, St. Raphael contends that (1) this Court lacks jurisdiction
over the appeal as the trial court's judgment did not dispose of Prime Staff's claim for
attorney's fees; (2) the trial court erred in entering judgment after St. Raphael had
revoked its consent to the entry of the agreed judgment; and (3) the trial court denied
St. Raphael due process of law in not conducting a hearing or trial on Prime Staff's
request for entry of judgment.

 We reverse and remand. (1)

Factual and Procedural Background

 In its first amended original petition, filed on January 25, 2005, Prime Staff
sought $5,688.48 in damages, prejudgment and postjudgment interest, costs of court,
and attorney's fees. (2) On September 13, 2005, Prime Staff and St. Raphael
subsequently entered into a settlement agreement (the "Agreement").

 In the Agreement, the parties stated their intent to "effect the extinguishment
of all obligations and controversies that exist between them as hereinafter
designated." They also stated their "desire to compromise and settle all claims
concerning the Invoices and the underlying litigation, and intend that the full terms
and conditions be set forth in this Agreement." St. Raphael agreed to pay Prime Staff
installments totaling $5,000 "in full and final settlement of all disputes between the
parties regarding the Invoices and this lawsuit." The Agreement additionally
provided: 

As security for such payments, [St. Raphael] agrees to execute an
Agreed Judgment against [St. Raphael] in favor of [Prime Staff] in the
amount of $16,095.12 less any amounts paid on this [Agreement].
[Prime Staff] agrees that it will not file, abstract[,] or execute upon the
Agreed Judgment as long as the above-described payments are timely
made. 


It also provided that "[s]ubject to compliance with the terms of this Agreement,
[Prime Staff] releases and forever discharges [St. Rafael] . . . for all matters and
claims for relief related in any way to the causes of action brought in the above-referenced suit . . . ." 

 Following the settlement, the trial court, on May 31, 2006, dismissed the case
for want of prosecution. On June 9, 2006, Prime Staff filed a verified motion to
reinstate, attaching a copy of the Agreement, a copy of the agreed judgment, and an
affidavit concerning St. Raphael's default on making the required payments. On June
22, 2006, the trial court granted Prime Staff's motion.

 On July 7, 2006, Prime Staff filed the previously agreed to judgment with the
trial court for its approval and entry. However, also on July 7, 2006, St. Raphael filed
its "Revocation of Consent to Agreed Judgment and Objections to Plaintiff's
Proposed Agreed Judgment" with the trial court. In this pleading, St. Raphael
revoked its consent to the agreed judgment and alleged that it was not in default of
the Agreement.

 On July 12, 2006, the trial court entered the agreed judgment, ordering St.
Raphael to pay $16,095.12 "less any amounts previously paid in this cause, or in
other words, judgment for the total amount of $13,095.12 with interest thereon at the
rate of 8.25 percent (8.25%) per annum on the entire judgment from the date said
judgment is signed until such judgment is fully and finally paid." The agreed
judgment also recites "that the parties have requested the Court to enter judgment
based upon that Agreement. The Court is of the opinion that a judgment in
accordance with the parties' agreement should be entered and it is accordingly"
decreed that judgment is in favor of Prime Staff. The judgment finally provides, "It
is further ORDERED, ADJUDGED and DECREED that [PRIME STAFF] is allowed
such writs and processes as may be necessary in the enforcement and collection of
this judgment. Costs of court are taxed to [St. Raphael]." 

 On August 11, 2006, St. Raphael filed a motion for new trial, asserting that it
had given prior notice to the trial court and Prime Staff that it had "revoked its
consent to the purportedly agreed judgment" entered by the trial court, and that
"[s]uch notice was filed with the [trial court] and served on [Prime Staff] prior to the
entry of the judgment." The motion was overruled by operation of law.

Jurisdiction

 In its first issue, St. Raphael argues that this Court lacks jurisdiction over the
appeal because the trial court's judgment failed to dispose of Prime Staff's claim for
attorney's fees.

 The general rule, with mostly statutory exceptions, is that an appeal may be
taken only from a final judgment. Lehmann v. Har-Con Corp., 39 S.W.3d 191, 195
(Tex. 2001). A judgment issued without a conventional trial is final for purposes of
appeal if and only if either it actually disposes of all claims and parties then before
the court, regardless of its language, or it states with unmistakable clarity that it is a
final judgment as to all claims and all parties. Id. at 192-93. Because the law does
not require that a final judgment be in any particular form, whether a judicial decree
is a final judgment must be determined from its language and the record in the case. 
Id. at 195. A judgment that fails to dispose of a claim for attorney's fees may prevent
it from being final and appealable. See McNally v. Guevara, 52 S.W.3d 195, 195-96
(Tex. 2001); see also In re K.M.B., 148 S.W.3d 618, 620-21 (Tex. App.--Houston
[14th Dist.] 2004, no pet.) (stating that order's failure to address attorney's fees
precluded it from being final judgment). 

 However, an agreed judgment is a final judgment on the merits. In re J.G.W.,
54 S.W.3d 826, 832 (Tex. App.--Texarkana 2001, no pet.). The agreement is no
longer a contract among private individuals but a judgment of the court. Ex Parte
Gorena, 595 S.W.2d 841, 844 (Tex. 1979). An agreed judgment "has neither less nor
greater force or effect than it would have had [if] it [had] been rendered after
litigation, except to the extent that the consent excuses error and operates to end all
controversy between the parties." Gulf Ins. Co. v. Burns Motors, Inc., 22 S.W.3d 417,
422 (Tex. 2000). The judgment "must be in strict or literal compliance" with the
terms of the settlement agreement. Vickrey v. Am. Youth Camps, Inc., 532 S.W.2d
292, 292 (Tex. 1976). 

 Thus, an agreed judgment is interpreted in the same manner as a contract. Gulf
Ins. Co., 22 S.W.3d at 422. A subsequent failure to perform a condition in the agreed
judgment does not invalidate the judgment. Hawkins v. Howard, 97 S.W.3d 676, 678
(Tex. App.--Dallas 2003, no pet.); Blum v. Mott, 664 S.W.2d 741, 745 (Tex.
App.--Houston [1st Dist.] 1983, no writ). The agreed judgment's validity and
correctness "is not called into question by a subsequent breach because the breach did
not occur until after the judgment was signed." Hawkins, 97 S.W.3d at 678. 
Therefore, "[a]lthough breach of the settlement agreement may give rise to new
claims between the parties, it does not affect the correctness of the judgment at the
time it was rendered." Id. On the other hand, res judicata applies to an agreed
judgment and is thus "conclusive on the matters actually raised and litigated and on
every other matter that could have been litigated and decided as an incident to or
essentially connected with the subject matter of the prior litigation." Jistel v. Tiffany
Trail Owners Ass'n, 215 S.W.3d 474, 480 (Tex. App.--Eastland 2006, no pet.). 

 Citing McNally, appellant first asserts that "[t]he judgment does not expressly
address and dispose of [St. Raphael's] claim for attorney's fees." See 52 S.W.3d at
196. In McNally, the plaintiff sued the defendants over an easement issue, and the
defendants moved for summary judgment on the issue and counterclaimed for
attorney's fees. Id. at 195. The trial court granted the defendants' summary judgment
on the easement issue and purported to issue a final judgment, even though the order
failed to address attorney's fees. Id. at 195- 96. The Texas Supreme Court held that
the trial court erred because "[n]othing in the trial court's judgment, other than its
award of costs to the defendants, suggests that it intended to deny the defendants'
claim for attorney fees. The award of costs, by itself, does not make the judgment
final." Id. at 196.

 In its live pleading at the time the judgment was entered, Prime Staff sought
attorney's fees from St. Raphael. However, the Agreement between Prime Staff and
St. Raphael provides that St. Raphael agreed to pay installments totaling $5,000 "in
full and final settlement of all disputes between the parties regarding the Invoices and
this lawsuit." (Emphasis added.) In the Agreement, the parties expressed their intent
"to effect the extinguishment of all obligations and controversies that exist between
them as hereinafter designated," their "desire to compromise and settle all claims
concerning the Invoices and the underlying litigation," and their intent that "the full
terms and conditions be set forth in this Agreement." 

 The previously agreed to judgment provided "that the parties have requested
the Court to enter judgment based upon that Agreement. The Court is of the opinion
that a judgment in accordance with the parties' agreement should be entered and it is
accordingly" decreed. The agreed judgment, executed as security for the settlement
payments, also awarded post-judgment interest. 

 Here, although Prime Staff's claim for attorney's fees is not explicitly
mentioned in either the Agreement or the agreed judgment, it is clear that the
intention of the parties was that the agreed judgment, which incorporated the
Agreement, was intended to dispose of all claims included in Prime Staff's petition,
including its claim for attorney's fees. The instant case is also distinguishable from
McNally because McNally involved an order purporting to be a final judgment that
granted a summary judgment which disposed of one issue, yet completely failed to
address the only other issue of attorney's fees. Id. The trial court here rendered an
agreed judgment, which "is conclusive, not only on the matters actually raised and
litigated, but it is also conclusive on every other matter that could have been litigated
and decided as an incident to or essentially connected with the subject matter." In re
J.G.W., 54 S.W.3d at 832; Bell v. Moores, 832 S.W.2d 749, 755 (Tex.
App.--Houston [14th Dist.] 1992, writ denied). 

 The Agreement also provides that "[s]ubject to compliance with the terms of
this Agreement, [Prime Staff] releases and forever discharges [St. Rafael] . . . for all
matters and claims for relief related in any way to the causes of action brought in the
above-referenced suit . . . ." In its reply brief, St. Raphael asserts that this clause
precludes a final judgment: 

According to [Prime Staff], [St. Rafael] had failed to comply with the
settlement agreement. . . . Therefore, according to [Prime Staff] based
on the portion of the agreement it relies upon and quotes [above] . . . its
suit against [St. Rafael] [is] no longer released, discharged, or settled. 
Such matters and claims would, of course, include [Prime Staff's] claim
for attorney's fees in its first amended petition, [Prime Staff's] live
pleading before the trial court at the time of entry of judgment.

 

 However, this does not affect the finality of the agreed judgment. Compare
Jistel, 215 S.W.3d at 480 (stating that res judicata is applicable to agreed judgments),
with Hawkins, 97 S.W.3d at 678 (stating that "breach of the settlement agreement
may give rise to new claims between the parties, [but] it does not affect the
correctness of the judgment at the time it was rendered"). The previously agreed to
judgment was in fact, by its own terms, executed as security for the settlement
payments. 

 Accordingly, we hold that the judgment is a final and appealable judgment and
that we have jurisdiction over the instant appeal. We overrule St. Raphael's first issue.

Revocation of Consent

 In its second issue, St. Raphael argues that the trial court erred in entering the
previously agreed to judgment because St. Raphael had revoked its consent to the
judgment prior to the court's signing it. Prime Staff argues that the trial court
properly entered the previously agreed to judgment because, even though St. Rafael
filed a revocation of consent with the trial court before it rendered judgment, "[St.
Rafael] did not request an immediate or emergency hearing and did not bring to the
court's attention that it objected to the agreed judgment that was being forwarded to
the court for approval." Prime Staff contends that "[a] trial court should not be
required to review the contents of the court's file . . . to determine if an agreed
judgment previously approved by the parties is now being contested or revoked." 
Prime Staff also asserts that St. Rafael should not be permitted to "sand bag" the trial
court with a last-minute filing. Prime Staff emphasizes that, here, the trial court "had
no actual knowledge that [St. Raphael] had revoked consent and was objecting to
entry of the agreed judgment prior to the signing of the final judgment." (3) 

 It is well-settled law that a party may revoke its consent to a settlement
agreement at any time before the court renders judgment on the agreement. Padilla
v. LaFrance, 907 S.W.2d 454, 461 (Tex. 1995) ("[C]ourt cannot render a valid agreed
judgment absent consent at the time it is rendered."); S & A Rest. Corp. v. Leal, 892
S.W.2d 855, 857 (Tex. 1995) ("A party may revoke its consent to a settlement
agreement at any time before judgment is rendered on the agreement."); Kennedy v.
Hyde, 682 S.W.2d 525, 528 (Tex. 1984) ("[N]otwithstanding a valid Rule 11
agreement, consent must exist at the time an agreed judgment is rendered."); Quintero
v. Jim Walter Homes, Inc., 654 S.W.2d 442, 444 (Tex. 1983) ("[A] party has the right
to revoke his consent at any time before the rendition of judgment."); Burnaman v.
Heaton, 240 S.W.2d 288, 291 (Tex. 1951) ("It is not sufficient to support the
judgment that a party's consent thereto may at one time have been given; consent
must exist at the very moment the court undertakes to make the agreement the
judgment of the court."). A trial court renders judgment when it "officially
announces its decision in open court or by written memorandum filed with the clerk." 
Leal, 892 S.W.2d at 857. A judgment rendered after one of the parties revokes its
consent is void. Id.; Samples Exterminators v. Samples, 640 S.W.2d 873, 874-75
(Tex. 1982).

 The Thirteenth Court of Appeals has held that "[a] pleading filed prior to
rendition of judgment which alleges a party's revocation of consent or a motion
opposing the entry of judgment on said grounds is sufficient to effectively withdraw
consent to the agreed judgment." Sohocki v. Sohocki, 897 S.W.2d 422, 424 (Tex.
App.--Corpus Christi 1995, no writ). In Sohocki, John Sohocki and Patricia Sohocki
signed a settlement agreement on September 14, 1993. Id. at 423. On October 8,
1993, Ms. Sohocki filed a "Revocation of Agreement." Id. On October 27, 1993, the
district court rendered judgment without knowledge of Ms. Sohocki's filing of her
revocation of consent. Id. Mr. Sohocki alleged that the district court properly
rendered judgment because Ms. Sohocki "should have first brought evidence of her
revocation of consent to the attention of the . . . court." Id. at 423- 24. Specifically,
Mr. Sohocki argued that the revoking party must request a hearing to "put the trial
court on 'notice' that . . . consent is lacking." Id. at 424. The court rejected Mr.
Sohocki's argument, stating that it found "no such requirement in the Texas Rules of
Civil Procedure or in caselaw." Id. The Fourteenth Court of Appeals has likewise
noted that a settlement agreement may be revoked before the court renders an agreed
judgment by filing a revocation of consent prior to the rendition of judgment. Stein
v. Stein, 868 S.W.2d 902, 904 (Tex. App.--Houston [14th Dist.] 1994, no writ). 

 The Texas Supreme Court has also explained, 

The same reasons which impel the setting aside of a consent judgment
rendered by the court with knowledge that a party does not consent
thereto will, in the interest of justice, also impel the setting aside of a
consent judgment rendered when the court is in possession of
information which is reasonably calculated to prompt the court to make
further inquiry into the party's consent thereto, which inquiry, if
reasonably pursued, would disclose the want of consent.


Burnaman, 240 S.W.2d at 291-92. In Burnaman, the plaintiff and the defendant
signed a settlement agreement on March 21, 1949. Id. at 289. On March 22, 1949,
a clerk informed the trial court that the plaintiff was "'trying to back out on the
settlement.'" Id. at 290. On March 23, 1949, the trial court rendered the judgment
in accordance with the settlement agreement, and the judgment was entered on
December 12, 1949. Id. at 291. Even though the trial court did not have knowledge
of the plaintiff's concerns about the settlement agreement until one day before the
court rendered judgment, the Texas Supreme Court set aside the agreed judgment. 
Id. at 292. The court noted that the judgment entered on December 12, 1949, stated
that the rendition of judgment on March 23, 1949 was made "'without either the court
nor any of the attorneys for either the plaintiff or defendants having any knowledge
that the plaintiff did not consider the compromise agreement acceptable.'" Id. The
court reasoned that notwithstanding the veracity of this recital, "it does not negat[e]
the fact that the court was in possession of information that plaintiff, if ever having
agreed thereto, did not consider the compromise agreement acceptable at the time
judgment was rendered on March 23rd." Id. 

 Here, on July 7, 2006, Prime Staff filed the agreed judgment with the trial court
for its approval and entry. Also, on that same date, prior to the court's rendering
judgment, St. Raphael filed its "Revocation of Consent to Agreed Judgment and
Objections to Plaintiff's Proposed Agreed Judgment" with the trial court. Thus, as
in Stein and Sohocki, St. Raphael gave notice through a filing with the trial court of
its revocation of consent to an agreed judgment before the trial court rendered a final
judgment. See Sohocki, 897 S.W.2d at 424; Stein, 868 S.W.2d at 904. St. Raphael
did not have to request a hearing after filing its notice. See Burnaman, 240 S.W.2d
at 292 (noting that clerk orally discovered that plaintiff had concerns with settlement
agreement); Sohocki, 897 S.W.2d at 424 (reasoning that motion put court on notice);
see also Leal, 892 S.W.2d at 856 (revoking agreed to judgment with letter). Also, in
accordance with Burnaman and Sohocki, a trial judge need not have actual knowledge
of a party's revocation of consent to an agreed judgment in order to make a party's
revocation effective. See Burnaman, 240 S.W.2d at 292 (noting that trial court may
be required to investigate whether party consented to agreed judgment when court
acquires information that questions whether party actually consented); Sohocki, 897
S.W.2d at 423 (stating that trial court did not have actual knowledge); see also
Quintero, 654 S.W.2d at 444 (citing Burnaman for proposition that "[w]hen a trial
court has knowledge that one of the parties to a suit does not consent to a judgment,
the trial court should refuse to sanction the agreement"); LaFrance, 907 S.W.2d at
461-62 (agreeing with Burnaman's reasoning). 

 Our focus is not on the trial court's knowledge of a party's revocation of
consent, but on the fact that consent has been revoked:

A valid consent judgment cannot be rendered by a court when consent
of one of the parties thereto is wanting. It is not sufficient to support the
judgment that a party's consent thereto may at one time have been
given; consent must exist at the very moment the court undertakes to
make the agreement the judgment of the court. This [is a] fundamental
principle . . . .


Burnaman, 240 S.W.2d at 291 (emphasis added).

 The bottom line is that St. Raphael filed its revocation of consent with the trial
court prior to the entry of the agreed judgment. Accordingly, we hold that the trial
court erred in rendering the agreed judgment after St. Raphael had revoked its
consent. We sustain St. Raphael's second issue. (4)

Conclusion

 We reverse the judgment of the trial court and remand for proceedings
consistent with this opinion.



 Terry Jennings

 Justice


Panel consists of Justices Nuchia, Jennings, and Keyes.



1. Although St. Raphael untimely filed its notice of appeal, it did file its notice of appeal
within the fifteen-day period in which parties may file a motion to extend time to file
a notice of appeal. Tex. R. App. P. 26.3. St. Raphael also timely filed its motion to
extend time to file a notice of appeal. Id. Included in this motion was a reasonable
explanation for the late filing of the notice of appeal, which we accepted. Tex. R.
App. P. 10.5(b); see Jones v. City of Houston, 976 S.W.2d 676, 677 (Tex. 1998). 
Therefore, we have jurisdiction over this appeal. 
2. See Tex. Civ. Prac. & Rem. Code Ann. §§ 38.001-.002 (Vernon 1997).
3. Prime Staff cites to no authority providing that the trial court is required to have
"actual knowledge" in order for a party's revocation of consent to an agreed judgment
to be effective.
4. Having held that the trial court erred in rendering the agreed judgment after St.
Raphael had revoked its consent, we need not address St. Raphael's third issue, in
which it argues that it was denied due process of law when the trial court failed to
conduct a hearing or trial on Prime Staff's request for entry of judgment.