**Reversed and Remanded and Memorandum Opinion filed August 28, 2014.**



In The

# Fourteenth Court of Appeals

## NO. 14-13-00564-CV

### REGINALD WARREN, REGINALD ROWE, AND FRED BULPITT, Appellants

### V.

### BP PRODUCTS NORTH AMERICA, INC. A/K/A BP TEXAS CITY AND BP CORPORATION NORTH AMERICA, INC., Appellees

**On Appeal from the 122nd District Court**
**Galveston County, Texas**
**Trial Court Cause No. 09-CV-1946**

## M E M O R A N D U M   O P I N I O N

Appellants, Reginald Warren, Reginald Rowe and Fred Bulpitt (collectively "Warren"), appeal a final judgment enforcing a settlement agreement and dismissing claims signed in favor of Appellees, BP Products North America Inc. a/k/a BP Texas City and BP Corporation North America, Inc. ("BP"). We reverse and remand.

## I. BACKGROUND

Warren filed suit alleging they were exposed to and sustained injuries resulting from a release of hydrogen sulfide at BP's Texas City Plant in October 2007. Joining them in the suit were four other plaintiffs, who are not parties to this appeal. To resolve the dispute, the parties were ordered to mediation. Prior to the December 2011 mediation, Warren and BP agreed in principle to a settlement. As part of the negotiations, BP's counsel forwarded to Warren's attorney a letter agreement which set forth terms of the settlement, including that Warren would sign a full and final release of any and all claims against BP as of the date of the settlement.

Immediately upon receiving the proposed agreement, Warren's counsel called counsel for BP explaining he could not sign the agreement as worded because his clients had other claims against BP which they wanted to preserve. Those claims arose as a result of an April 2010 benzene release and a release of dimethyl disulfide sometime in the November-December 2011 timeframe. Warren's counsel did not represent Warren (and the other plaintiffs) in the additional claims.

BP's counsel responded he would relay this information to BP, and he did. Later that same day, it was determined that all claims as of November 30, 2011, would be released by the settlement agreement. The parties dispute who first proposed the date—there is, however, no dispute that counsel for Warren advised BP that his clients would agree to that date *only* if it would not preclude them from asserting claims against BP for other releases in addition to and separate from claims asserted in connection with the October 2007 release which was the subject of the letter agreement.

2

On the day of the mediation of three other plaintiffs' claims, counsel for BP delivered a Rule 11 letter agreement to Warren's counsel, which counsel signed. The Rule 11 letter agreement contained the November 30 date. During mediation, Warren's counsel learned additional information concerning the dimethyl-disulfide release. Counsel for Warren learned it had occurred mid-November through November 26 or 27; therefore, the November 30 date would need to be moved back to November 1 in order to preserve Warren's additional claims which were not to be covered by the settlement agreement of claims resulting from the October 2007 release. Warren advised BP of this information and the request to change the date to November 1. The plaintiffs whose cases were being mediated entered into settlements including a release date of November 1. However, as to Warren, BP forwarded settlement documents containing the November 30 date. Warren refused to sign them.

BP then filed its motion to enforce the settlement agreements. The motion states, "Plaintiffs have failed and refused to proceed with the settlement agreement." On the same day, BP amended its answer asserting "by way of affirmative defense" that the parties entered into a settlement agreement and " . . . all claims have been compromised, settled and resolved. Should any Plaintiff not agree, Defendants seek specific performance."

BP also filed its notice of submission on its motion to enforce scheduling the matter for oral hearing on April 30, 2012. Subsequently, the court sent the parties a notice changing the hearing on BP's motion to enforce settlement agreements to May 31, 2012. Warren filed a verified response to the motion, urging the release exceeds the scope of the Rule 11 letter agreement, the letter is ambiguous, the release exceeds the scope of counsel's authority, mutual mistake, and fraud.

On May 31, 2012, the trial court held a "hearing" on BP's motion to enforce the settlement agreements. In support of its motion, BP offered the December Rule 11 letter agreement and it offered for *in camera* inspection only the unsigned settlement agreements. At the conclusion of the hearing, the trial court granted BP's motion to enforce the settlement agreements.

In June 2012, Warren moved for non-suit, which the trial court granted. In response, BP filed a motion to set aside the order of non-suit, urging the order granting its motion to enforce was affirmative relief which precluded the non-suit. The trial court granted BP's motion to set aside the non-suit. Warren filed a motion to reconsider the orders granting the motion to enforce and denying the motion for non-suit. The trial court denied the motion to reconsider both motions.

In September 2012, BP filed a counterclaim alleging breach of contract. In March 2013, BP filed a "notice of submission for entry of final judgment." Warren objected to the proposed judgment, incorporating their responses to BP's motion to enforce and Warren's motion to reconsider, and lodging other objections.

In April 2013, the trial court rendered judgment for BP, enforcing the settlement agreements as drafted with the November 30 date, disposing of all claims, and dismissing all remaining issues. The judgment does not refer to BP's pleading of specific performance or breach of contract. Instead, the final judgment states, "The terms and conditions of the Rule 11 settlement agreement between Plaintiffs Reginald Warren, Reginald Rowe and Fred Bulpitt and the BP Defendants is incorporated by reference herein as if set out *verbatim*," although it was not an exhibit at the hearing.

Warren filed a motion for new trial, again asserting, among other contentions, that there was no agreement to the November 30 date; therefore, no

consent to the settlement agreements as written. Additionally, Warren challenged the procedure by which the trial court granted BP's motion to enforce the settlement agreements, specifically objecting there was no proper pleading and proof allowing enforcement of the settlement agreements. The motion was overruled by operation of law.

Adopting BP's proposed findings and conclusions, the trial court signed findings of fact and conclusions of law. The findings of fact state, *inter alia,* "[t]he BP Defendants' Motion to Enforce Settlement Agreements included claims for affirmative relief and requested specific performance of the settlement agreements between the BP Defendants and these Plaintiffs." Further, the findings of fact state, "The BP Defendants' Motion to Enforce Settlement Agreements constituted notice to these Plaintiffs of the BP Defendants' claims for affirmative relief and for specific performance of the settlement agreements." However, as noted above, specific performance was not mentioned in BP's motion to enforce, was not set for hearing, and was not mentioned at the "hearing."

## II. STANDARD OF REVIEW

On appeal, Warren asserts: (1) the trial court abused its discretion in enforcing the settlement agreement after being made aware Warren had withdrawn consent, where fact issues were raised and in the absence of pleadings and proof; and (2) the trial court erred in rendering judgment.

A trial court's "decision whether a settlement agreement should be enforced as an agreed judgment or must be the subject of a contract action requiring additional pleadings and proof is subject to the abuse of discretion standard of review." *Staley v. Herblin*, 188 S.W.3d 334, 336 (Tex. App.—Dallas 2006, pet. denied) (citing *Mantas v. Fifth Court of Appeals*, 925 S.W.2d 656, 659 (Tex. 1996).

5

When the trial court files findings of fact and conclusions of law, we give them the same weight as a jury's verdict, and review the factual and legal sufficiency of the evidence supporting them in the same manner we would review a jury's findings. *Catalina v. Blasdel*, 881 S.W.2d 295, 297 (Tex. 1994); *Daniel v. Falcon Interest Realty Corp.*, 190 S.W.3d 177, 184 (Tex. App.—Houston [1st Dist.] 2005, no pet.) We review a trial court's conclusions of law *de novo* and uphold them if the judgment can be sustained on any legal theory supported by the evidence. *BMC Software Belgium, N.V. v. Marchand*, 83 S.W.3d 789, 794 (Tex. 2002). In a legal-sufficiency review, we must consider all of the evidence in the light most favorable to the findings and indulge every reasonable inference which would support them. *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005). We credit favorable evidence if a reasonable fact finder could and disregard contrary evidence unless a reasonable fact finder could not. *Id*. at 827. The evidence is legally sufficient if it would enable a reasonable and fair-minded person to reach the verdict under review.

We review the conclusions of law to determine whether they are correct. *BMC Software*, 83 S.W.3d at 794. If a conclusion of law is erroneous, but we believe the trial court rendered a proper judgment, we are not required to reverse it. *Id*.

### III. ANALYSIS

This appeal arises from the trial court's judgment on a Rule 11 letter agreement. It is undisputed that counsel for both parties executed a Rule 11 letter agreement. However, before a judgment is rendered on a settlement agreement, a party may revoke its consent at any time. *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983) (holding where one party did not consent to joint motion to dismiss, final judgment rendered on the motion was improper).

Withdrawal of consent must be clearly communicated to the trial court. *Miller v. Miller*, 721 S.W.2d 842, 843 (Tex. 1986); *Baylor College of Med. v. Camberg*, 247 S.W.3d 342, 346 (Tex. App.—Houston [14th Dist.] 2008, pet. denied) (citing *First Heights Bank, FSB v. Marom*, 934 S.W.2d 843, 845 (Tex. App.—Houston [14th Dist.] 1996, no writ). "[A] pleading filed prior to rendition of judgment which alleges a party's revocation of consent or a motion opposing the entry of judgment on said grounds is sufficient to effectively withdraw consent to the agreed judgment." *Sohocki v. Sohocki*, 897 S.W.2d 422, 424 (Tex. App.—Corpus Christi, 1995, no writ).

Thus, we must first address whether Warren withdrew consent. There is no magic formula to be used in communicating to the trial court a party's withdrawal of consent. When a trial court is "in possession of information which is reasonably calculated to prompt the court to make further inquiry into the party's consent thereto, which inquiry, if reasonably pursued, would disclose the want of consent," judgment rendered on the agreement must be set aside. *Burnaham v. Heaton*, 240 S.W.2d 288, 291–92 (Tex. 1951).

In *Burnaham*, the parties signed a settlement agreement. The next day the trial court was informed that plaintiff was "trying to back out on the settlement." *Id*. at 290. Nevertheless, the trial court rendered judgment in accordance with the terms of the settlement agreement, even though it had knowledge of plaintiff's misgivings about it. The Texas Supreme Court held the rendition of judgment was improper because the "court was in possession of information that plaintiff, if ever having agreed thereto, did not consider the compromise agreement acceptable at the time judgment was rendered. . . ." *Id.* at 292.

Following this reasoning, a trial court must not enforce an agreement when it acquires information which brings into question whether one of the parties no

longer consents to the judgment. *Padilla v. LaFrance*, 907 S.W.2d 454, 461 (Tex. 1995) (announcing that counterclaim and summary judgment on the counterclaim was proper method to obtain relief); *Quintero*, 654 S.W.2d at 444; *Baylor College of Medicine*, 247 S.W.3d at 346–47, 349 (concluding where parties filed conflicting motions for entry of judgment, the trial court is on notice there is no consent; therefore, judgment was proper only because it was entered on the verdict and not to enforce terms of Rule 11 agreement); *Pingel v. Stephens*, No. 07-96-0269-CV, 1997 WL 133520, at *3 (Tex. App.—Amarillo March 25, 1997, no pet.) (not designated for publication) (holding trial court was notified by party's attorney that opposing party refused to execute settlement agreement, information was sufficient to require trial judge to inquire, which inquiry would have resulted in trial court's discovery of withdrawal of consent and, thus, judgment must be reversed).

On this record, we conclude that Warren communicated withdrawal of consent. First, the trial court's findings of fact note that Warren has refused to sign the settlement documents. The trial court's finding is consistent with BP's motion to enforce the settlement agreements which disclosed that Warren had refused to sign them. Second, Warren's response to the motion communicated verified facts about the mistaken dates of the release agreed upon in the Rule 11 letter agreement and the refusal to consent to release claims in accordance with the Rule 11 agreement.

Warren's withdrawal of consent does not necessarily end our inquiry, however. Even after consent is withdrawn, a settlement agreement may still be enforced upon proper pleading and proof. *See Padilla*, 907 S.W.2d at 462 (citing *Quintero*, 654 S.W.2d at 444; *Browning v. Holloway*, 620 S.W.2d 611, 615 (Tex. App.—Dallas 1981, writ ref'd n.r.e.)). We, therefore, treat Warren's claim as a

challenge to the sufficiency of the pleading and proof to support the judgment. *See Bayway Services, Inc. v. Ameri-Build Const. L.C*., 106 S.W.3d 156 (Tex. App.— Houston [1st Dist. 2003, no pet.) (holding where consent was withdrawn and enforcement pursued, evidence of breach of contract was insufficient to enforce the settlement agreement).

With regard to "proper pleading," the trial court's findings of fact reveal the pleading upon which the judgment rests, stating the motion to enforce provided "[n]otice to these Plaintiffs of the BP Defendants' claims for affirmative relief and for specific performance of the settlement agreements" and "included claims for affirmative relief and requested specific performance of the settlement agreements."[1]  We note our sister court has determined that a "motion to sign judgment" may constitute a proper pleading upon which a settlement may be enforced. *Id*.  The parties have not cited and we have not found any cases in which our court has determined that a motion to enforce is or may be a proper pleading upon which a court may enforce a settlement.  In this case, however, we need not determine whether BP's motion to enforce constitutes a proper pleading because we conclude there is insufficient proof to support the judgment.

The "proof" upon which BP relied for the enforcement of the settlement agreements was the Rule 11 letter agreement.  The unsigned settlement agreements produced *in camera* were not in evidence or offered as an exhibit at the hearing.  Even if we assume the Rule 11 letter agreement was sufficient to support the existence of an agreement, BP points to no evidence of breach.  The record reveals that no witnesses testified and no other exhibits were admitted.

---

[1] We note that although the trial court's May 2013 findings of fact and conclusions of law purport to determine Warren breached the settlement agreements, BP did not plead breach of contract until September 2012, well after the hearing on the motion to enforce occurred.  The record does not reflect any type of court proceeding to determine the merits of BP's September 2012 breach of contract claim.

9

The trial court states, "the BP Defendants presented evidence by virtue of an Agreed Statement of Fact." The finding lacks support in this record. At the May hearing, counsel for BP suggested he was arguing an "agreed set of facts." However, the parties did not file an agreed statement of facts, and the trial court neither signed nor certified an agreed statement of facts in compliance with Texas Rule of Civil Procedure 263. *See* Tex. R. Civ. P. 263. Therefore, there are no agreed facts which would obviate the necessity of proof in this case.

In sum, we conclude there is insufficient evidence to support the trial court's judgment enforcing the settlement agreements. To the extent that the trial court rendered judgment on the parties' agreement after becoming aware that Warren no longer consented to the agreement, such decision is error and "the appellate remedy for a trial court's entry of an agreed judgment when the court is or should be aware that the parties no longer consent is to reverse and remand for a new trial." *See Baylor College of Medicine*, 247 S.W.3d at 346. We must, therefore, reverse and remand for a new trial.

Therefore, we sustain appellants' first issue and we need not address appellants' second issue. We reverse the judgment and remand the case to the trial court for further proceedings consistent with this opinion.


/s/     John Donovan
        Justice


Panel consists of Justices McCally, Busby, and Donovan.

10