

COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

| | | |
|---|---|---|
| KIMBERLY HAMPTON, | § | No. 08-23-00343-CV |
| Appellant, | § | |
| | § | Appeal from the |
| v. | § | 65th Judicial District Court |
| | § | |
| AARON HELTON, JR. | § | of El Paso County, Texas |
| Appellee. | § | (TC# 2023DCM4326) |
| | § | |

## <u>OPINION</u>

Appellant Kimberly Hampton brings this appeal challenging an agreed protective order, which was issued against her, and on behalf of Appellee Aaron Helton, Jr., pursuant to Chapter 7B of the Code of Criminal Procedure.[1] We affirm the trial court's order.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On August 3, 2023, the El Paso County Attorney's Office filed an application for a protection order on behalf of Aaron Helton, Jr., and against Kimberly Hampton. The application

---

[1] *See* Tex. Code Crim. Proc. Ann. art 7B.001–.008.

alleged that Hampton had engaged in acts constituting the stalking of Helton. It requested a protective order pursuant to Article 7B.001 of the Code of Criminal Procedure.

On August 24, 2023, the trial court held a hearing where Helton and Hampton both appeared via Zoom. An Assistant County Attorney appeared for Helton while Hampton appeared pro se. At the start of the hearing, the trial court noted it had been presented with an agreed protective order that contained Hampton's signature. Helton next testified that he was formerly in a dating relationship with Hampton, and they had a child together. He testified he also agreed with the protective order, and he signed it. He understood the order had a duration of two years. He confirmed he believed it was in his best interest.

Hampton then testified that she agreed to the two-year protective order. She confirmed she reviewed the main provisions of the order and signed it. Hampton also agreed that no one forced her to agree to the order. As a specific term of the order, Hampton confirmed that within 48 hours she would be giving a firearm she currently possessed to a third party. Hampton also confirmed that the third party would then submit an affidavit to the court confirming his or her possession of the weapon until the end of the protective order period. Hampton further testified she understood that any violation of the agreed protective order could result in civil and criminal consequences. When asked whether she believed the order was in the best interest of Helton, she responded, "[n]o, not necessarily, but I just want to be done with it[.]"At the conclusion of the hearing, the trial court granted the agreed protective order.

On that same day, the trial court signed the written agreed order. On the face of the order, the trial court entered several findings as follows: that it had subject matter jurisdiction of the case; that the parties had agreed to the terms of the protective order, as evidenced by their signatures; that the terms of the protective order were in the best interest of the applicant; and the agreed terms

were made a part of the protective order. The protective order was granted until August 23, 2025.

By the terms of the order, Hampton was prohibited from:

(1) Communicating directly or indirectly with [Helton] or a member of the family or household of a person protected by an order, in a threatening or harassing manner;

(2) Going within 200 yards of the residence or place of employment, or business of [Helton] or member of the family or household of [Helton] . . .;

(3) Engaging in conduct directed specifically toward [Helton] or a person who is a member of the family or household of [Helton] including following the person, that is reasonably likely to harass, annoy, alarm, abuse, torment, or embarrass the person.

(4) Possessing a firearm, unless [Hampton] is a peace officer, as defined by Section 1.07, Penal Code, actively engaged in employment as a sworn, full-time paid employee of a state agency or political subdivision.

It further ordered Hampton to surrender her firearm and ammunition.

After the order was issued, Hampton retained an attorney. On her behalf, her attorney filed both a motion for new trial and a supplemental motion for new trial. The trial court denied the motions. This appeal followed.

## II. ISSUES ON APPEAL

Hampton presents five issues on appeal. First, she asserts the trial court erred in granting the agreed protective order pursuant to § 85.001 of the Family Code in lieu of the findings required by Article 7B.052 of the Code of Criminal Procedure. Second, she argues the trial court erred in finding the conditions in the agreed protective order were necessary and appropriate to prevent or reduce the likelihood of future harm to the applicant. Third, she maintains the trial court erred in issuing the agreed protective order because she withdrew her consent prior to its rendition. Fourth, she claims the written agreed protective order did not comport with the oral rendition. Fifth and finally, she urges the agreed protective order violated her Second Amendment right to bear arms.

3

### III. AGREED PROTECTIVE ORDER

In combining Hampton's first four issues, she asserts the trial court erred in granting the agreed protective order. Hampton asserts that the trial court was required to make a finding that probable cause exists to believe the offense of stalking was committed and was likely to occur in the future. Specifically, Hampton asserts § 7B.052 of the Code of Criminal Procedure allows for an agreed protective order without findings of family violence, but the trial court must still find probable cause that stalking was committed. In response, Helton contends that Hampton misinterprets the statutory framework for protective orders based on stalking. Helton argues that, because there are multiple avenues for obtaining a stalking protective order, the trial court did not commit error here in granting the agreed protective order.

Protective orders may be issued pursuant to provisions in both the Family Code and the Code of Criminal Procedure. *See* Tex. Fam. Code Ann. § 82.002 (allowing person to file application for protective order to protect against family violence); Tex. Code Crim. Proc. Ann. art. 7B.003 (allowing person who is a victim of certain criminal conduct to file application for protective order).

Subchapter A of Article 7B of the Code of Criminal Procedure provides that protective orders may be rendered to protect victims of stalking. Tex. Code Crim. Proc. Ann. art. 7B.001. "If the [trial] court finds that there are reasonable grounds to believe that the applicant is the victim of sexual assault or abuse, stalking, or trafficking, the [trial] court shall issue a protective order that includes a statement of the required findings." *Id.* art. 7B.003(b). The subchapter further provides that "to the extent applicable, except as otherwise provided by this subchapter, Title 4, Family Code, applies to a protective order issued under this subchapter." *Id.* art. 7B.008. Looking to the Family Code, it provides a trial court shall render a protective order if the court finds that family

4

violence has occurred and is likely to occur in the future. Tex. Fam. Code Ann. § 85.001(a), (b). Section 85.001 mirrors the language provided in Article 7B.003 in that both require the trial court to make findings when issuing a protective order. *See id.* § 85.001 (stating the trial court must find whether family violence has occurred when issuing a protective order as provided by § 85.022); Tex. Code Crim. Proc. Ann. art. 7B.003 (stating the trial court must find whether there are reasonable grounds to believe that the applicant is the victim of stalking when issuing a protective order). Moreover, both codes provide for conditions that may be included in the protective order. *See* Tex. Fam. Code Ann. § 85.022(b) (stating the trial court may prohibit the person found to have committed family violence from acts like committing violence, communicating in a threatening or harassing manner, going near the applicant's residence, and possessing a firearm); Tex. Code Crim. Proc. Ann. art. 7B.005 (permitting conditions in a granted protective order under the subchapter that prohibit the alleged offender from the same type of acts).

In light of these provisions, the Family Code also provides for issuance of an agreed protective order. Section 85.005 permits parties to enter into an agreed protective order, with conditions as prescribed by § 85.022, subject to approval by the court. Tex. Fam. Code Ann. § 85.005(a). The statute makes clear that agreed protective orders are "enforceable civilly or criminally, regardless of whether the court makes the findings required by Section 85.001." *Id.* § 85.005. Similarly, because the trial court is permitted to enter an agreed protective order under Article 7B, the same standard would apply. *See* Tex. Code Crim. Proc. Ann. art. 7B.008 (stating the Family Code applies to protective orders issued under chapter 7B). Because the Family Code provides for an agreed protective order regardless of whether the trial court made a finding of

5

family violence, we conclude the trial court is permitted to enter an agreed protective order under Article 7B.001 regardless of whether the trial court made a finding of stalking.[2]

Hampton does not dispute the trial court's authority to enter agreed protective orders. Rather, she asserts that even when granting an agreed protective order under § 85.005, the trial court was required to make findings pursuant to Article 7B.052. Article 7B.052 provides that a trial court may enter a protective order in lieu of the finding of family violence if the court finds probable cause exists to believe the offense of stalking was committed and is likely to occur in the future. Tex. Code Crim. Proc. Ann. art. 7B.052. However, the trial court did not enter a "Stalking Protective Order" as provided for by Article 7B.051. *See id.* art. 7B.051 (providing a person may request the court to enter a protective order at a proceeding relating to an offense of stalking under § 42.072 of the penal code). Because the trial court did not grant an agreed protective order under this article, we reject Hampton's contention.

Next, Hampton contends the trial court erred in granting the conditions listed in the agreed protective order, specifically the condition that she surrender any firearms or ammunition, because it lacked legally sufficient evidence to support a best interest finding. During the agreed protective order hearing, Helton testified the protective order was in his best interest. Hampton testified she did not believe the protective order was in Helton's best interest but wanted to "be done with it." We cannot say the trial court lacked sufficient evidence of best interest to enter the conditions

---

[2] We find it important to note that, although a trial court is permitted to enter an agreed protective order without making the requisite findings, should it make findings nonetheless it cannot do so without legally sufficient evidence. *See Joseph v. Joseph*, No. 14-20-00855-CV, 2022 WL 3205099, at *2 n. 4 (Tex. App.—Houston [14th Dist.] Aug. 9, 2022, no pet.) (striking a finding in the agreed protective order that "family violence has occurred and that family violence is likely to occur again in the future" when no evidence was presented to support the finding and affirming the agreed protective order as modified). However, there were no findings of family violence or stalking made in the order at issue here. The trial court entered an agreed protective order based on the parties' agreement to its terms, and their agreement was supported by the evidence of record.

specified in the agreed protective order. Moreover, § 85.005 permits the trial court to enter an agreed protective order with the conditions set out in § 85.022.

Lastly, Hampton asserts she withdrew her consent to an essential term of the agreed protective order because she disagreed the protective order was in Helton's best interest. During Hampton's testimony at the agreed protective order hearing, the County Attorney asked her whether she believed the order was in the best interest of Helton. Hampton replied, "[n]o, not necessarily, but I just want to be done with it[.]" Hampton asserts that because her comment went unchallenged, there was a lack of consent to a vital fact—that is, the best interest of the person protected. A party has the right to revoke her consent at any time before the rendition of judgment. *Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983). But there was no proof of revocation here. Hampton clearly consented to the agreement; and she never revoked her consent. Hampton was asked whether she agreed to the two-year protective order and whether she signed the order, to which she answered affirmatively. Also, Hampton testified that she was not forced to agree to the protective order and that she reviewed the terms of the order before signing. Hampton's response indicating she did not necessarily believe the order was in Helton's best interest does not alone amount to a revocation or withdrawal of consent. This Court has particularly noted the impact of an agreed protective order when a party later appeals. As we previously stated:

> A person cannot choose to avoid the presentation of evidence at a hearing on an application for a protective order by agreeing to the terms of that order, and then, at a much later date, avoid the consequences of violating the order based on a claim that the applicant never proved a justification for the order.

*S.M.*, 658 S.W.3d 876, 880 (Tex. App.—El Paso 2022, no pet.) (quoting *Torres v. State*, No. 08-19-00209-CR, 2021 WL 3400598, at *4 (Tex. App.—El Paso Aug. 4, 2021, no pet.) (not designated for publication)). Hampton cannot now argue the trial court erred in excluding findings when she agreed to and signed the order as it stands, without such findings included.

7

For all these reasons, we overrule Hampton's first, second, third, and fourth issues.

## IV. SECOND AMENDMENT RIGHTS

Hampton's fifth issue is presented in its entirety in roughly one page of text. She asserts the agreed protective order violates her Second Amendment right to bear arms due to the terms that prohibit her from possessing a firearm, requiring she surrender all firearms and ammunition to a third party, and requiring the suspension and surrender of her conceal carry license. In support of her assertion, Hampton cites to a single, unavailing case. Not only is the authority factually distinguishable, for it considers the constitutionality of a federal statute that is not at issue here, it also has since been overturned by the United States Supreme Court. *United States v. Rahimi*, 61 F.4th 443 (5th Cir. 2023), cert. granted, 143 S. Ct. 2688 (2023) and rev'd and remanded, 144 S. Ct. 1889 (2024). Apart from citing to non-persuasive authority, Hampton does not further develop her argument nor otherwise analyze the constitutionality of the complained of provision.

Because Hampton has inadequately briefed her constitutional complaint, we conclude there is nothing presented for our review. *See* Tex. R. App. P. 38.1(i). We overrule Hampton's final issue without commenting on the constitutionality of the provision.

## V. CONCLUSION

We affirm.

GINA M. PALAFOX, Justice

August 29, 2024

Before Alley, C.J., Palafox, and Soto, JJ.

8