# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00811-CV

**Appellant, Harris County Hospital District // Cross-Appellants, Public Utility Commission of Texas and Southwestern Bell Telephone Company d/b/a AT&T Texas**

**v.**

**Appellees, Public Utility Commission of Texas and Southwestern Bell Telephone Company d/b/a AT&T Texas // Cross-Appellee, Harris County Hospital District**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 250TH JUDICIAL DISTRICT NO. D-1-GN-15-005808, HONORABLE SCOTT H. JENKINS, JUDGE PRESIDING

## O P I N I O N

This is a suit for judicial review pursuant to the Administrative Procedure Act, Tex. Gov't Code §§ 2001.001–.902. The Harris County Hospital District filed a complaint with the Public Utility Commission (PUC) contesting certain fees Southwestern Bell Telephone Company charged its telecommunications customers in the 1990s. Southwestern Bell's successor in interest, AT&T, contends the fee dispute was resolved by a class-action settlement in 2000. The PUC ultimately dismissed the complaint, holding the Hospital District's claims barred by res judicata due to the class-action settlement. The district court reversed that order, holding that the Hospital District is not bound by the settlement because it was not represented in that action in accordance with Section 281.056(b-1) of the Health and Safety Code, which requires a county or district attorney to represent certain hospital districts "in all legal matters." *See* Tex. Health & Safety Code

§ 281.056(b-1)(2) (requiring such representation in any county "with population of 3.4 million or more"). We agree with AT&T and the PUC that the Hospital District is bound by the disputed settlement decree. We will therefore reverse the district court's order and render judgment dismissing the case. *See* Tex. R. App. P. 43.2 (requiring this court to render the judgment the trial court should have rendered).

## I
## BACKGROUND

Telecommunications utilities in Texas may charge customers a fee to recover certain costs resulting from use of public rights of way. These "municipal fees" are governed by Section 54.206 of the Utilities Code, which allows the utility "to collect a fee that a municipality imposes . . . through a pro rata charge to the customers [with]in the boundaries of the municipality." Tex. Util. Code § 54.206(b). For more than two decades, customers have alleged that Southwestern Bell imposed excessive municipal fees throughout the 1990s, resulting in several lawsuits. Four are relevant here.

**The *Mirales* Settlement**

Litigation commenced in 1998 in Cameron County when two residential customers sued Southwestern Bell and alleged the utility had been charging excessive municipal fees since October of 1991. The parties ultimately negotiated a *cy pres* class-action settlement—now known as the *Mirales* Settlement—to resolve all related claims in Texas. The proposed settlement defined the putative class as:

2

> [A]ll persons and entities who currently reside in the State of Texas who subscribe, or formerly subscribed, to telephone service provided by [Southwestern Bell] and pay, or paid, to [Southwestern Bell] a municipal fee imposed pursuant to a municipal ordinance, other than an ordinance based on a percentage of gross receipts, and collected pursuant to a tariff or statute.

That definition excluded certain customers not relevant here, including employees of Southwestern Bell and the district court.

The proposed settlement, once accepted by the district court, would prohibit any class member from pursuing any claim arising from Southwestern Bell's collection of these allegedly excessive fees:

> "Released Claims" means any and all claims, rights, causes of action, suits, matters, issues, controversies, or other bases for liability, whether known or unknown, that have been, could have been, or that might be asserted hereafter in the Lawsuit or in any other court or administrative or regulatory proceeding . . . which have arisen, arise now, or hereafter may arise or relate in any way to the pass-through or collection of municipal fees in Texas, including all causes of action that are or could be raised under Plaintiffs' pleadings on file herein or that consumers or customers could raise in relation to Southwestern Bell's pass-through of municipal fees.

It continues, "Any member of the Settlement Class who has not properly and timely requested exclusion from the Settlement Class shall be bound by any and all judgments, settlements, or releases entered or approved by the Court whether favorable or unfavorable to the class." *See* Tex. R. Civ. P. 42(c)(2)(B)(v) (establishing putative class member's right to opt out of class).

After allowing the parties time to notify putative class members of the proposed settlement, the district court held two hearings on the fairness of the proposed certification and settlement. At the first hearing, certain commercial customers objected to the putative class as too

3

variant to satisfy the commonality requirement of certification. *See id.* R. 42(b)(3) (requiring common questions of law and fact to "predominate" over any individual questions). This challenge was led by Southwestern Tariff Analyst (STA), a telecommunications billing auditor that had attempted to intervene as named plaintiff but whose petition in intervention had been stricken on Southwestern Bell's motion.

The district court continued the hearing to afford Southwestern Bell time to address the objections to certification. The hearing resumed a week later, and the reporter's record reflects that STA offered to withdraw its objections and waive any right to appeal the intervention ruling if Southwestern Bell would preserve STA's right to bring a separate class action on behalf of governmental and commercial customers. Southwestern Bell declined to change the class definition but agreed not to raise res judicata or related defenses "in any class action lawsuit brought by STA as plaintiff." The agreement was memorialized under Rule 11 and dictated into the reporter's record.

The district court then certified the class and accepted the settlement proposal. On May 4, 2000, the court's final judgment "grant[ed] final approval to the Settlement Agreement" and deemed it "in all respects, fair, reasonable, adequate, and in the best interests of the Settlement Class." The judgment indicates that all objections were "carefully considered and [were] all overruled." The district court later issued a judgment nunc pro tunc to correct certain typographical and clerical errors in the final judgment.

**The *STA* Suit**

After the *Mirales* Class settled its claims, STA filed a class action in 2003, proposing to represent nearly 7,000 governmental and commercial customers with respect to any remaining

claims arising from the same allegedly excessive fees. *See Southwestern Bell Tel. Co. v. Marketing on Hold, Inc.*, 308 S.W.3d 909, 914 (Tex. 2010) (*STA*). The Hospital District was identified by the class representative and separately by Southwestern Bell as one of these putative class members, but no attorney other than class counsel appeared on behalf of the Hospital District.

The district court eventually certified the class and the court of appeals affirmed, but the Supreme Court of Texas reversed, holding that STA—as the only named plaintiff—had not met its burden to show it could adequately represent the class. *See* Tex. R. Civ. P. 42(a) (requiring, inter alia, a showing that "the representative parties will fairly and adequately protect the interests of the class"); *STA*, 308 S.W.3d at 27 ("Although STA satisfied the typicality and predominance requirements to be a class representative . . . it failed to establish that it is an adequate class representative.").

**The Harris County Suit**

A series of mergers left AT&T as successor in interest to Southwestern Bell's liability arising from this fee dispute. Shortly after the Supreme Court of Texas overruled certification of the *STA* class in 2010, the Hospital District sued AT&T in Harris County district court, reiterating the statutory challenge to the same fees litigated in *Mirales* and *STA*. The Hospital District conceded the similarity of the allegations but argued its claims were "carved out" of the released claims by the Rule 11 agreement and thus that it is not bound by the *Mirales* Settlement. The district court did not reach that argument, instead accepting AT&T's response that the claims arise from a fee dispute that falls within the PUC's exclusive jurisdiction. *See* Tex. Util. Code §§ 17.157, 52.002, 54.206. It dismissed any "claims that seek[] reimbursement of municipal charges under tariff," and abated the

5

remaining "claims for additional damages based on Gross Negligence, Fraud and/or the Texas Deceptive Trade Practices Act" pending the PUC's resolution of the fee dispute. The Hospital District apparently did not file an appeal or seek mandamus relief from the dismissal or abatement.

**The PUC Complaint**

The Hospital District submitted its fee complaint to the PUC in March of 2012. AT&T responded with a motion to dismiss and a motion for summary decision characterizing the Hospital District's allegations as injusticiable due to the *Mirales* Settlement and the doctrine of res judicata. *See Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 450 (Tex. 2007) ("Basic principles of res judicata apply to class actions just as they do to any other form of litigation." (citing *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 377–79 (1996); *Cooper v. Federal Reserve Bank*, 467 U.S. 867, 87 (1984); *Southwestern Ref. Co. v. Bernal*, 22 S.W.3d 425, 432 (Tex. 2000))). The PUC referred the question of justiciability to an administrative law judge (ALJ) at SOAH. The ALJ denied the motion to dismiss and the motion for summary decision.

After more than three years of litigation over the complaint filed at the PUC, the ALJ rendered a proposal for decision recommending dismissal of the matter. He explained, "Under the doctrine of res judicata, all of the claims asserted by [the Hospital District] in this proceeding are barred by the *Mirales* Final Judgment approving the *Mirales* Class Action Settlement." The PUC subsequently adopted the proposal for decision, including its finding of facts and conclusions of law, and issued an order dismissing the Hospital District's complaint.

The Hospital District sought judicial review in December of 2015, naming the PUC as defendant. AT&T later intervened in the case. As the primary basis for its challenge to the PUC's

order, the Hospital District argued that it could not have been a member of the *Mirales* Class because Section 281.056 of the Health and Safety Code—as it existed at the time—provided, "The county attorney, district attorney, or criminal district attorney, as appropriate, with the duty to represent the county in civil matters[,] shall represent the district in all legal matters." *See* Tex. Health & Safety Code § 281.056(b) (West 1998). It is undisputed that no such attorney appeared or filed pleadings on behalf of the District during the *Mirales* litigation. The district court ultimately reversed the PUC's final order:

> As a matter of law, pursuant to Section 281.056, Texas Health & Safety Code, [the Hospital District] must be represented by the county attorney unless its board opts to retain outside counsel. No such counsel represented [the Hospital District] in the *Mirales* lawsuit. As a legislatively-created governmental entity[,] [the Hospital District] cannot be part of or bound by a class[-] action lawsuit unless it takes such action to participate in the lawsuit. Consequently, as a matter of law, [the Hospital District's] claims were not resolved by the *Mirales* lawsuit nor resolved by its final judgment.

All three parties filed timely appeal.

## II
## DISCUSSION

The parties raise three issues on appeal. First, the Hospital District contends the district court should have held the 20-year-old *Mirales* Settlement void because the released claims arise from a fee dispute that falls within the exclusive jurisdiction of the PUC. Second, the PUC and AT&T contends the district court erred by reversing the PUC's order and holding the Hospital District not bound by the Settlement's release. Third, the Hospital District contends that, even assuming the *Mirales* Settlement is not void and the *Mirales* Class can be construed to include the

7

Hospital District such that its claims would otherwise be barred by release or res judicata, AT&T should be judicially estopped from urging this Court to include the Hospital District in that class. We address these arguments in turn.

**A. The Hospital District Cannot Prevail on Its Collateral Challenge.**

The Hospital District contends the Travis County district court erred by failing to hold the *Mirales* Settlement void. In support, the Hospital District argues that the Harris County district court correctly held the fee dispute within the PUC's exclusive jurisdiction and thus that the Cameron County district court could not have had jurisdiction over the same fee dispute during the *Mirales* litigation. According to the Hospital District, without jurisdiction over the subject matter, the Cameron County district court could not have certified the class and accepted the settlement. We review this challenge de novo. *See Gauci v. Gauci*, 471 S.W.3d 899, 901 (Tex. App.—Houston [1st Dist.] 2015, no pet.) (citing *Tex. Natural Res. Conservation Comm'n v. IT–Davy*, 74 S.W.3d 849, 855 (Tex. 2002)).

We begin by noting that this is not a jurisdictional challenge raised on direct appeal. Instead, the Hospital District collaterally challenges a twenty-year-old class-action settlement decree resolving tens of thousands of claims filed over two decades ago. Courts generally will not entertain collateral challenges to final orders, as the law favors finality and certainty. *See Browning v. Prostok*, 165 S.W.3d 336, 345 (Tex. 2005) (citing *Tice v. City of Pasadena*, 767 S.W.2d 700, 703 (Tex. 1989); *Crouch v. McGaw*, 138 S.W.2d 94, 96 (Tex. 1940)). However, collateral challenge is proper if the disputed judgment is allegedly void. *See Browning v. Placke*, 698 S.W.2d 362, 363 (Tex. 1985) (per curiam) (orig. proceeding). A judgment is void only if "the court rendering

8

judgment had no jurisdiction of the parties or property, no jurisdiction of the subject matter, no jurisdiction to enter the particular judgment, or no capacity to act." *PNS Stores, Inc.*, 379 S.W.3d 267, 272 (Tex. 2012) (citing *Travelers Ins. Co. v. Joachim*, 315 S.W.3d 860, 863 (Tex. 2010)).

As the Supreme Court of Texas recently noted, "the traditional doctrine was that a judgment of a court shown to have lacked subject matter jurisdiction was void" such that no further inquiry was necessary to resolve the collateral challenge. *Engelman Irrigation Dist. v. Shields Bros., Inc.*, 514 S.W.3d 746, 752 (Tex. 2017) (quoting Restatement (Second) of Judgments § 12 cmts. a, b (Am. Law. Inst. 1982)) (internal quotation marks omitted). However, the Restatement adopts a "'modern rule on conclusiveness of determinations of subject matter jurisdiction . . . giv[ing] finality substantially greater weight.'" *Id.* The *Engelman* Court made these observations while considering whether to hold a twenty-year-old judgment void based on retroactive application of more recent precedent on sovereign immunity—a doctrine well established as implicating jurisdiction over subject matter. *Id.* at 748. After explaining that the modern approach would bar this attempted collateral challenge due to the need for finality in the dispute, the Court ultimately rejected the plaintiff's argument and declined to recognize retroactive application of new precedent as a basis for collateral challenge. *Id.* at 755.

Although the *Engelman* Court did not rest its holding on Section 12 of the Restatement of Judgments, it acknowledged the modern trend favoring finality and certainty. *See id.* at 750. This approach requires the reviewing court to weigh any factors militating for and against upholding the validity of the challenged judgment. *See* Restatement (Second) of Judgments § 12 (Am. Law. Inst. 1982). These factors may vary in any given case, but include the age of the disputed

9

judgment, the number of parties affected by that judgment, the breadth of the original tribunal's jurisdiction, the extent to which that tribunal made a jurisdictional determination, and the challenger's participation in the litigation that resulted in the disputed judgment. *See id.* In the present case, every relevant factor weighs in favor of finality—"an anchoring principle of any functioning and efficient judicial system." *See Engelman*, 514 S.W.3d at 753. The challenged judgment is nearly two decades old, binds tens of thousands of class members, was rendered by a court of general jurisdiction, and includes a statement indicating that the court found jurisdiction over "all claims" and "all parties."

But perhaps more importantly, the Hospital District—as party to this litigation—has had ample opportunity to litigate its jurisdictional challenge. "A party that has an opportunity to litigate the question of subject matter jurisdiction may not at a later time reopen that question in a collateral attack upon an adverse judgment." *Bass v. Champion Int'l Corp.*, 787 S.W.2d 208, 212 (Tex. App.—Beaumont 1990, no writ) (citing *Chicot Cty. Drainage Dist. v. Baxter State Bank*, 308 U.S. 371 (1940)); *see also Insurance Corp. of Ir., Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 702 n.9 (1982) ("A party that has had an opportunity to litigate the question of subject-matter jurisdiction may not, however, reopen that question in a collateral attack upon an adverse judgment."); *Kortebein v. American Mut. Life Ins. Co.*, 49 S.W.3d 79, 88 (Tex. App.—Austin 2001, pet. denied) ("Absent class members' due-process right to adequate representation is protected by the adoption of appropriate procedures by the certifying court and by appeal . . . . Due process does not require collateral second-guessing of those determinations and that review."). After reviewing the record, the PUC concluded Southwestern Bell's customers

10

received adequate notice of the *Mirales* litigation in 2000, and the Hospital District does not deny it received that notice. *See* Tex. R. App. P. 38.1(g). The Hospital District could have raised this argument at that time. In addition, the Hospital District concedes its membership in the putative *STA* class, whose named representative sought relief from the same disputed fees in district court. And although the Supreme Court ultimately deemed that class uncertifiable in 2010, the Hospital District could have raised this argument before that determination. Because the relevant facts and circumstances of this case—including the Hospital District's opportunity to litigate this jurisdictional challenge in *Mirales* and *STA*—weigh in favor of finality, we reject its present challenge to the *Mirales* Final Judgment. We overrule the Hospital District's first issue.

**B. The Hospital District Is Bound by *Mirales.***

The crux of this dispute is whether the PUC correctly held that the *Mirales* Class includes the Hospital District or the district court correctly reversed that holding. AT&T contends the PUC "correctly found [the Hospital District's] claims are barred by a straightforward application of the *Mirales* Settlement's release provision." Similarly, the PUC, as party to this appeal, argues:

> [The Hospital District's] claims are barred by the *Mirales* settlement and judgment in two distinct was. First, the doctrine of res judicata precludes [the Hospital District], a *Mirales* class member, from relitigating the exact claims adjudicated and resolved in *Mirales*. . . . Second, setting aside res judicata, the exact claims [the Hospital District] presses in this lawsuit were released in *Mirales*.

We agree with AT&T and the PUC that the present claims are barred by the release in the *Mirales* Settlement.

11

### 1. *The Hospital District's Claims Were Released by the Mirales Settlement*.

The PUC is correct that the *Mirales* Settlement expressly releases the claims the Hospital District attempts to bring here. "'A settlement agreement is a contract, and its construction is governed by legal principles applicable to contracts generally.'" *Garza v. Villarreal*, 345 S.W.3d 473, 479 (Tex. App.—San Antonio 2011, pet. denied) (quoting *Donzis v. McLaughlin*, 981 S.W.2d 58, 61 (Tex. App.—San Antonio 1998, no pet.)). "It is the general rule of the law of contracts that where an unambiguous writing has been entered into between the parties, the Courts will give effect to the intention of the parties as expressed or as is apparent in the writing." *City of Pinehurst v. Spooner Addition Water Co.*, 432 S.W.2d 515, 518 (Tex. 1968). We review the interpretation of an unambiguous contractual provision de novo. *See URI, Inc. v. Kleberg County*, 543 S.W.3d 755, 763 (Tex. 2018).

The *Mirales* Class is defined in relevant part as "all persons and entities who currently reside in the State of Texas who subscribe, or formerly subscribed, to telephone service provided by [Southwestern Bell] and pay, or paid, to [Southwestern Bell] a municipal fee . . . ." None of the parties characterizes this language as ambiguous, and the Hospital District does not deny it is an entity who subscribed to telephone service from Southwestern Bell and paid the municipal fees during the disputed period. Southwestern Bell's records confirm as much. Thus, the Hospital District is a member of the *Mirales* Class.

The claims released in the *Mirales* Settlement include "any and all claims which have arisen, arise now, or hereafter may arise or relate in any way to the pass-through or collection of municipal fees in Texas." Again, the parties and this Court are in agreement that the language is

12

unambiguous.  Thus, we turn to the ordinary meaning of the terms to interpret the clause.  Black

defines "arise from" as to "originate from," "stem from," or "result from."  *See Arise, Black's Law*

*Dictionary* (10th ed. 2014).  In the present suit, the Hospital District alleges:

> [Southwestern Bell's] failure or refusal to refund the Unauthorized Charges
> [i.e., municipal fees charged in excess of statutory guidelines] constitutes a material
> breach of contract and a violation of tariff, substantive rule[s] and PURA, and has
> resulted in unlawful rates being charged and collected by [Southwestern Bell] from
> [the Hospital District].

Each of these claims originates, stems, and results from Southwestern Bell's collection of allegedly

impermissible municipal fees.  The Hospital District's claims therefore arise from the collection of

those fees and fall within the scope of the *Mirales* Settlement's release.

The Hospital District, however, argues that the unambiguous language of this release

does not apply to its case because that language does not accurately reflect the claims the *Mirales*

parties intended to release.  A settlement release is governed by the law of contracts and is therefore

limited by any defenses available in contract law.  *See Williams v. Glash*, 789 S.W.2d 261, 264 (Tex.

1990).  As the party seeking to avoid this unambiguous release, the Hospital District bears the burden

of demonstrating an applicable defense, such as fraud, mutual mistake, or lack of consideration.  *See*

*id.* ("[O]nce the affirmative defense of release has been pleaded and proved, the burden of proof is

on the party seeking to avoid the release to establish mutual mistake.").  The Hospital District offers

the reporter's record from the *Mirales* certification hearing as evidence that the parties never

intended to release its claims as part of the *Mirales* Settlement.  As the Hospital District describes

it, the parties "carve[d] out claims regarding certain business customers"—allegedly including the

13

Hospital District—"from the class action." Yet the evidence offered by the Hospital District does not support its argument. The Hospital District is correct that counsel for AT&T dictated certain stipulations into the record as part of a Rule 11 Agreement accepted by the court, but at no point did AT&T or the court adopt any claim definition or class definition other than those stated in the *Mirales* Settlement.[1]

The Hospital District also contends it is neither fair nor prudent to hold governmental entities bound by class-action settlements unless those entities affirmatively choose to "opt in" to the action. But Texas law requires putative class members to opt *out* of a settlement to avoid the binding effects of class action. *See* Tex. R. Civ. P. 42(c)(2)(B)(v); *Entex v. City of Pearland*, 990 S.W.2d 904, 913 (Tex. App.—Houston [14th Dist.] 1999, no pet.) ("The trial court recognized the problems with the opt-out provisions of the class action and expressed its preference for an opt-in notification of class action, which is not available in Texas."), *abrogated on other grounds*, *Tracker Marine, L.P. v. Ogle*, 108 S.W.3d 349, 351 (Tex. App.—Houston [14th Dist.] 2003, no pet.); *Enterprise Concepts, Inc. v. Finnell*, 964 S.W.2d 348, 349–50 (Tex. App.—Beaumont 1998, no pet.) (emphasizing the opt-in provision of the Fair Labor Standards Act, 29 U.S.C. § 216(b), and characterizing the suit as "not a true class action under Rule 42 of the Texas Rules of Civil Procedure" due to this prerequisite to class membership). The Hospital District has not identified any authority distinguishing governmental entities from private entities with respect to the procedures governing class membership under state law, and courts may not "require a particular procedure when the legislature has not seen fit to do so itself." *Matthews v. Scott*, 268 S.W.3d 162,

---

[1] We discuss the Rule 11 Agreement in further detail in our discussion of estoppel, *infra*.

14

173 (Tex. App.—Corpus Christi 2008, no pet.) (citing *City of Rockwall v. Hughes*, 246 S.W.3d 621, 631 (Tex. 2008)). Thus, even assuming any merit to the Hospital District's policy arguments regarding the effect of class-action settlements on governmental entities, we would defer to the Legislature to make any changes to the rules governing class actions.

Because the unambiguous definitions in the *Mirales* Settlement include the Hospital District and its allegations, and because the Hospital District offers no persuasive basis for contract avoidance, we conclude its claims fall within the scope of the release.

### 2. Section 281.056 Does Not Exempt the Hospital District from the Release.

The Hospital District argues that even if its claims would otherwise fall within the *Mirales* Settlement's release, the Hospital District is not bound by that release because it was not represented in the manner required by statute when the Cameron County district court rendered final judgment. Section 281.056 of the Health and Safety Code provides, "The county attorney, district attorney, or criminal district, as appropriate, with the duty to represent the county in civil matters shall represent the district in all legal matters." *See* Tex. Health & Safety Code § 281.056(b). According to the Hospital District, "The plain language of Section 281.056 requires the presence of the Harris County Attorney in 'all legal matters.'" Based on the undisputed fact that this attorney was never present in court and filed no pleadings in the *Mirales* litigation, the Hospital District reasons that it was not "represented" in accordance with the statute. We find the argument unavailing.

"When interpreting a statute, our primary objective is to ascertain and give effect to the Legislature's intent without unduly restricting or expanding the Act's scope." *Greater Hous.*

15

*P'ship v. Paxton*, 468 S.W.3d 51, 58 (Tex. 2015) (citing *City of Lorena v. BMTP Holdings, L.P.*, 409 S.W.3d 634, 641 (Tex. 2013)). "We seek that intent first and foremost in the plain meaning of the text." *Id.* at 58 (citing *Lorena*, 409 S.W.3d at 641; *Texas Lottery Comm'n v. First State Bank*, 325 S.W.3d 628, 635 (Tex. 2010)). "'Undefined terms in a statute are typically given their ordinary meaning . . . .'" *Greater Hous. P'ship*, 468 S.W.3d at 58 (quoting *TGS–NOPEC Geophysical Co. v. Combs*, 340 S.W.3d 432, 439 (Tex. 2011)).

"Represent" is not defined in Section 281.056, so we turn to its ordinary meaning. *See id.* Courts have defined the verb as "[to] fill the place of for some purpose: substitute in some capacity." *See Thomas v. United Parcel Serv., Inc.*, 890 F.2d 909, 917–18 (7th Cir. 1989) (quoting *Webster's Third New International Dictionary* 1926 (3d ed. 1981)). Similarly, Merriam defines "represent" as "to manage the legal and business affairs of." *See Merriam-Webster's Collegiate Dictionary* 1057 (11th ed. 2008). The Random House definition of "represent" is "to stand or act in the place of, as an agent does." *The Random House College Dictionary* 1120 (Revised ed. 1984). And American Heritage defines the word as "to act as a spokesperson for." *American Heritage Dictionary of the English Language* 1490 (5th ed. 2015). None of these definitions supports the Hospital District's argument that an attorney must be "presen[t]" in court or file pleadings to represent a client. Particularly in the context of government and in-house counsel, attorneys routinely represent their clients by advising them not to intervene, not to file responsive pleadings, etc. But these attorneys are still representing their clients by advising them, managing their affairs, and acting on their behalf. Thus, the attorneys delineated in Section 281.056 need not necessarily appear in court or file pleadings to comply with the representation directive.

16

The Hospital District complains that the county attorney's office had no opportunity to provide advice pursuant to the statute because no one notified that office of the *Mirales* litigation. This argument implies that the named plaintiffs, the court, or class counsel had an obligation under Section 281.056 to notify the county attorney of the class action. But the statute offers no support for such a construction. To the contrary, while other statutes place the burden to notify government counsel on the plaintiff or the presiding court, *cf.* Tex. Gov't Code § 402.010, this statute's only burden is placed on the county attorney itself. *See id.* § 311.016(2) ("'Shall' imposes a duty.'"). Moreover, the record reflects that the Hospital District itself received adequate notice of the proposed class-action settlement. The Hospital District does not deny it received that notice. To whatever extent the county attorney was unaware of the litigation, that unawareness would have resulted, at least in part, from the Hospital District's failure to apprise the attorney of the pending class action. Thus, under the Hospital District's interpretation of this Section, it could simply avoid unwanted litigation by failing to notify the county attorney. This is not a reasonable construction of the statute. *See* Tex. Gov't Code § 311.021(2)–(3) (requiring courts to presume the legislature intended a just, reasonable, and effective result in enacting statute). Because the Hospital District's proposed construction is not reasonable and is inconsistent with the language of the statute, must reject that construction.

We sustain the issue raised by AT&T and the PUC.

## C. AT&T Is Not Estopped from Seeking to Bind the Hospital District.

In the final issue before this Court, the Hospital District contends AT&T is judicially estopped from characterizing the Hospital District as a member of the *Mirales* Class. If the Hospital

District is correct, any error in the District Court's analysis was harmless and its order cannot be reversed. *See* Tex. R. App. P. 44.1(a).

"'Judicial estoppel is a common law doctrine that prevents a party from assuming inconsistent positions in litigation.'" *Perryman v. Spartan Tex. Six Capital Partners, Ltd.*, 546 S.W.3d 110, 117 (Tex. 2018) (quoting *Kane v. Nat'l Union Fire Ins.*, 535 F.3d 380, 385 (5th Cir. 2008)). Because judicial estoppel is an affirmative defense, the party urging estoppel has the burden to conclusively prove each element. *See Anadarko Petrol. Corp. v. Thompson*, 94 S.W.3d 550, 553 (Tex. 2002) (listing as affirmative defense); *OAIC Comm'l Assets, L.L.C. v. Stonegate Vill., L.P.*, 234 S.W.3d 726, 742 (Tex. App.—Dallas 2007, pet. denied) (stating burden); *Southwest Guar. Tr. Co. v. Providence Tr. Co.*, 970 S.W.2d 777, 782 (Tex. App.—Austin 1998, pet. denied) (same). Appellate courts generally review judicial estoppel for an abuse of discretion. *See Perryman*, 546 S.W.3d at 117.

The elements of judicial estoppel are: "(1) a sworn, prior inconsistent statement made in a judicial proceeding; (2) the party now sought to be estopped successfully maintained the prior position; (3) the prior inconsistent statement was not made inadvertently or because of mistake, fraud, or duress; and (4) the statement was deliberate, clear and unequivocal." *In re Marriage of Butts*, 444 S.W.3d 147, 151 (Tex. App.—Houston [14th Dist.] 2014, no pet.) (citing *Spera v. Fleming, Hovenkamp & Grayson, P.C.*, 25 S.W.3d 863, 871 (Tex. App.—Houston [14th Dist.] 2000, no pet.); *Vinson & Elkins v. Moran*, 946 S.W.2d 381, 396 (Tex. App.—Houston [14th Dist.] 1997, writ dism'd by agr.)). To satisfy the first element, the party seeking estoppel must conclusively demonstrate that the opposing party "alleged or admitted in his pleadings in a

18

former proceeding . . . the contrary to the assertion sought to be made" in the present proceeding. *Long v. Knox*, 291 S.W.2d 292, 295 (Tex. 1956) (citing 31 C.J.S. Estoppel, § 121 (1955)) (other citations omitted).

The Hospital District cannot prevail on this defense because it has not identified any prior inconsistent statement by Southwestern Bell or AT&T. As evidence of such a statement, the Hospital District produced the transcript from the final hearing on certification of the *Mirales* Class. The Hospital District contends this transcript shows that Southwestern Bell "entered into a Rule 11 agreement . . . to carve out claims [of] certain business customers from the class action . . . including [the Hospital District's]." This characterization is contradicted by the transcript itself. The transcript confirms that the parties entered into the Rule 11 Agreement and dictated that agreement into the record. That agreement, however, did not "carve out" any class members or claims from the proposed settlement. Instead, STA—the only remaining challenger to certification of the *Mirales* Class—"agree[d] to withdraw all of its objections to the settlement of the *Mirales* lawsuit." In exchange for the withdrawn objection, Southwestern Bell agreed that it would not assert "any judgment, ruling, order[,] or action of the Court in the *Mirales* lawsuit" as a defense to any "class action lawsuit brought by STA as plaintiff (whether the lawsuit is ultimately certified as a class action or not) . . . in which STA asserts the STA claims for itself and on behalf of a class of similar situation persons or entities." But at no point in this record did Southwestern Bell suggest that governmental or commercial customers lie outside the *Mirales* Class, and at no point did it deviate from the unambiguous language of the class definition, which includes all "entities who currently

19

reside in the State of Texas who subscribe, or formerly subscribed, to telephone service provided by [Southwestern Bell]." The Hospital District does not deny that it constitutes such an entity.

Nor was Southwestern Bell's subsequent litigation of the *STA* class action inconsistent with AT&T's current position regarding the binding effect of the *Mirales* Settlement on the Hospital District. The Hospital District argues otherwise, pointing to a list of putative class members that includes the Hospital District. It further alleges that Southwestern Bell "litigated the *STA* case accepting and affirmatively arguing that the proposed class members in that case included not only [the Hospital District] but dozens of governmental, commercial and other institutional customers." This argument mischaracterizes Southwestern Bell's position in *STA*. From the first day of litigation, Southwestern Bell "vigorously dispute[d]" the existence of any certifiable class and denied the viability of the claims alleged. Nothing in this record reflects that Southwestern Bell ever suggested the Hospital District—or any other putative class member—had a viable claim arising from the fee dispute or that the present claims lie outside the release set forth in the *Mirales* Settlement. Thus, the Hospital District has produced no evidence of a statement "contrary to the assertion[s]" AT&T makes in the present case.[2] We overrule the issue.

---

[2] *Long v. Knox*, 291 S.W.2d 292, 295 (Tex. 1956). The Hospital District appears to argue that Southwestern Bell's failure to raise the possible res judicata effect of *Mirales* during the *STA* litigation constitutes a prior inconsistent statement. Under the *Mirales* Rule 11 Agreement, Southwestern Bell had promised not to raise that argument against STA and its putative class. Thus, even assuming any inconsistency between that omitted statement and the assertions made here, "[t]he doctrine of judicial estoppel simply does not apply under these circumstances." *Ferguson v. Building Materials Corp. of Am.*, 295 S.W.3d 642, 644 (Tex. 2009) (explaining that the doctrine is intended "to prevent parties from playing fast and loose with the judicial system"); *Spartan Tex. Six Capital Partners, Ltd. v. Perryman*, 494 S.W.3d 735, 749 (Tex. App.—Houston [14th Dist.] 2016, pet. granted) ("[C]ourts should determine if applying judicial estoppel is appropriate in light of the specific facts of each case and the doctrine's purpose of 'protect[ing] the integrity of the

## III
## CONCLUSION

Having concluded that the district court erred in reversing the PUC's order dismissing the Hospital District's complaint, we reverse its final judgment and render judgment affirming the PUC's dismissal order.  Tex. R. App. P. 43.2.

_____

Edward Smith, Justice

Before Chief Justice Rose, Justices Kelly and Smith

Reversed and Rendered

Filed:   May 3, 2019

---

judicial process.'" (quoting *United States ex rel. Long v. GSDMIdea City, L.L.C.*, 798 F.3d 265, 271 (5th Cir. 2015)) (alteration in original), *aff'd as modified*, 546 S.W.3d 110 (Tex. 2018)).