# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-21-00249-CV

**Francis M. Harrison, Appellant**

**v.**

**Mary E. Freehill and Charles Gerard Harrison, Appellees**

### FROM PROBATE COURT NO. 1 OF TRAVIS COUNTY
### NO. C-1-PB-20-000866, THE HONORABLE GUY S. HERMAN, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The underlying probate action began when appellant Francis M. Harrison filed an application in Travis County to probate a 2015 will executed by his mother, Margaret Harrison. A short time later, appellees Mary E. Freehill and Charles Gerard Harrison (two of Francis's six siblings) filed in Williamson County an application to probate a 2020 will of Margaret.[1] After a transfer of the Williamson County proceeding to Travis County and attempted settlement, the trial court granted appellees' motion for summary judgment determining that the 2020 will is valid and dismissing Francis's claims about its invalidity. Francis then perfected this appeal. He challenges the trial court's orders (1) denying his motion to approve and enforce a Rule 11 agreement and (2) denying his motion for a new trial or to modify the judgment. For the following reasons, we affirm the challenged orders and the summary judgment.

---

[1] Because some of the parties share the same surname, for clarity and ease we will refer to them by their given names or their designation as appellant or appellees.

## BACKGROUND

Margaret died April 26, 2020, in Williamson County survived by seven of her nine children. In May 2020, Francis filed an application for probate of will and issuance of letters testamentary in Travis County seeking to probate a 2015 will executed by Margaret.[2] Later that same month, Mary and Charles filed an application for probate of will and issuance of letters testamentary in Williamson County seeking to probate a 2020 will executed by Margaret.[3] Subject to his previously filed motion to transfer venue to Travis County, Francis filed an answer and will contest in the Williamson County action, alleging that the 2020 will and a related special warranty deed executed contemporaneously were invalid because Margaret lacked testamentary capacity and was unduly influenced. The parties agreed to transfer the Williamson County action to Travis County, consolidating the two probate applications.

Appellees filed an application for the appointment of a temporary administrator, arguing that the pending will contest between them and Francis necessitated such appointment. Francis opposed the application. In July 2020, the trial court appointed a temporary dependent administrator, Charles O. Grigson, until the will "contest is terminated and an executor or

---

[2] In the 2015 will, Margaret bequeathed all her property, including her Austin home (comprising the bulk of her estate), to Francis, except for her wedding ring, which she bequeathed to Mary. In that will Margaret appointed Mary as independent executor and the following of her other children as respective first, second, and third contingent executors: Helen Markow, Francis, and Charles. Contemporaneously with that will, Margaret purportedly executed a so-called "ladybird deed" conveying her home to Francis but reserving for herself a life estate and the power to revoke the deed.

[3] In the 2020 will, Margaret bequeathed all her property, in equal shares, to her surviving children. It appointed Charles and Mary as independent co-executors and Helen as contingent independent executor, and it contained a no-contest clause: "If any person should directly or indirectly object to or contest the probate of this Will, the distribution or disposition of my estate, or in any manner hinder the carrying out of the letter and spirit of this Will, then that person . . . shall take nothing under this Will . . . ."

administrator with full powers is appointed." On November 17, 2020, Francis filed an unsecured claim against the estate for $264,578.69 for payments he allegedly made for repairs, renovations, insurance, and property taxes for Margaret's home. Appellees objected to the claim, contending that it was unsupported by admissible evidence and was barred by the applicable statute of limitations and the statute of frauds.

On November 18, 2020, the parties mediated their dispute about the will contest. Mary, Charles, Francis, and their respective counsels attended. Mary and Charles had obtained limited powers of attorney for three of their siblings—Helen, Tom, and Sissy—with respect to any settlement they might reach with Francis. The remaining surviving sibling, Joseph, was not represented and did not appear at the mediation. The mediation led to a Rule 11 agreement (Agreement) in the form of a series of e-mails on November 18, providing that Francis would pay $225,000 to Charles, Mary, and the three siblings they represented (the Settling Parties) in consideration for the administrator's conveyance of Margaret's home to Francis via a "distribution deed." Francis and the Settling Parties agreed to "execute all documents necessary to effectuate this transaction" and that, if it became necessary to probate a will to effectuate the transaction, the parties would probate the will that "most efficiently carries out the terms of the agreement."

The Agreement further provided that if Francis was unable to close on the purchase of Margaret's home "within sixty (60) days of the execution of this Agreement," he would have "an additional fifteen (15) days to vacate" the home so that it could be sold by the administrator. If the administrator were thus required to sell the home, he would list it for $385,000, and any associated costs (e.g., commissions and closing costs) would be split between Francis paying 41.6% and the Settling Parties paying 58.4%. The remaining sale proceeds

3

would be divided thus: Francis would receive 41.6% and the Settling Parties would receive 58.4%. The Agreement provided that the parties would execute an "additional agreement including these terms and including full mutual releases no later than 10 days after the execution of this Agreement" and that the Agreement did not address the distribution of tangible personal property, about which the parties could continue negotiating and return to the mediator if agreement could not be reached within ten days of execution of the Agreement. Francis and the Settling Parties never executed an additional agreement or the referenced "full mutual releases" and did not return to the mediator regarding the distribution of personal property.

On January 13, 2021, Mary and Charles filed two motions with the trial court: (1) a motion to approve and enforce the Agreement and (2) a traditional and no-evidence motion for summary judgment. In the motion to approve and enforce, to which they attached a copy of the Agreement, Mary and Charles represented that Joseph was the only sibling "who did not agree to the terms of" the Agreement but that Francis's attorney had assured them that he would obtain Joseph's signature because Joseph had expressed his desire not to pursue "any claim" he had to the estate. They further represented that their attorney had since called Joseph (who hung up on him) and sent Joseph an e-mail seeking his signature to indicate his consent to the Agreement but had not received a response and would thus need to serve Joseph and set a hearing on the matter of his consent. Because Francis had "suggested that he will not comply with the terms of the Agreement," Mary and Charles were seeking to have the court approve and enforce it. On February 2, 2021, appellees filed with the trial court a notice of Joseph's acceptance of the Agreement, to which they appended an undated document signed by Joseph indicating that he had "carefully read the e-mail agreement between the parties to this matter

4

dated November 18, 2020," "agree[s] to its terms," and "understand[s]" in agreeing thereby that he "will receive nothing" from Margaret's estate.

In their summary-judgment motion, Mary and Charles argued that their attached summary-judgment evidence established as a matter of law that the 2020 will and deed were executed with all required formalities and that Francis's claims that both documents are invalid should be dismissed. In the no-evidence portion of the motion, they argued that Francis had no evidence to support his claims that the two 2020 documents are invalid because of undue influence or for "other [unspecified] reasons" or that Margaret lacked capacity to execute them. On February 5, Francis filed a response to the summary-judgment motion making the sole argument that the motion was "mooted by" the Agreement. The only evidence he attached was the Agreement; an e-mail from appellees' counsel indicating that Joseph had not accepted the Agreement prior to January 29, 2021; and Joseph's undated acceptance thereof.

On February 12, Francis filed a response to the motion to approve and enforce the Agreement requesting the court to approve the Agreement and to "authorize the administrator to permit [Francis] to purchase the Property as provided" by the Agreement. That same day, the trial court conducted a hearing on both motions, at which Mary and Charles argued that Francis's recent filings "suggested that [he doesn't] want to abide by the" Agreement and, if he did not, they were "going to move forward with [their] motion for summary judgment." They argued that the sixty-day deadline for Francis to close on purchasing the home had expired on January 17, and the deadline for him to vacate the home had also expired, on February 1. Because Francis did not comply with either deadline, they asked the court to issue an order requiring Francis to move out immediately so that Grigson could sell the home pursuant to the

Agreement, as the "real estate market in Austin is on fire," and "every single day that we lose that [Francis] is in that house is money that's lost out of this estate."

Through counsel, Francis argued that the deadlines referenced in the Agreement did not start running until January 29, 2021, when Joseph indicated his acceptance of it. Alternatively, he argued that the deadlines would not begin running until the trial court signed an order approving the Agreement, as Grigson would not be able to provide a distribution deed to Francis without the court's approval. Mary and Charles responded that they no longer wished to enforce the Agreement in light of Francis's understanding of when the deadlines would run and his seeking the now-expired option of purchasing the home, and they proceeded to argue the merits of their summary-judgment motion.

Brian Thompson, the attorney for Mary and Charles, testified that at the mediation, the mediator told him that Francis had been pre-approved for a loan. However, despite Thompson's requests then and since, Thompson explained that Francis never provided him documentation thereof. Instead, Francis provided him a loan application dated January 12, 2021—five days before the sixty-day deadline for Francis's closing on the home purchase—and had unsuccessfully attempted to obtain the Settling Parties' agreement to an extension of the closing deadline. Thompson also testified that prior to the mediation, Francis's former counsel told Thompson that Francis had obtained a power of attorney for Joseph—the "only sibling that kind of lines up on Francis'[s] side"—and that he and his clients were "always under the impression that Joseph . . . was okay with whatever."

At the conclusion of the hearing, the trial court orally denied the motion to enforce and approve the Agreement and granted the motion for summary judgment and signed two orders on February 26 reflecting those rulings. The order granting appellees' summary-

6

judgment motion decreed that the 2020 will and deed are valid and were executed "with all required formalities." It further stated, "This judgment is intended to be final and appealable and is intended to dispose of all parties and issues related to the validity of the Will and the Deed."

On March 29, Francis filed a motion for new trial or to modify the judgment, which the trial court denied May 10. Francis perfected this appeal from the summary judgment, complaining of the trial court's refusal to enforce and approve the Agreement and denying his motion for new trial or to modify the judgment. Although Francis appeals from the summary-judgment order, he does not challenge the merits of the summary-judgment ruling.

## DISCUSSION

In his first issue, Francis contends that the trial court abused its discretion in refusing to approve and enforce the Agreement.[4] We review a trial court's decision regarding enforcement of a Rule 11 agreement for an abuse of discretion. *Mantas v. Fifth Circuit Court of Appeals*, 925 S.W.2d 656, 659 (Tex. 1996) (per curiam); *Infiniti Hotel Grp., LLC v. Patel*, No. 03-09-00601-CV, 2011 WL 1344605, at *6 (Tex. App.—Austin Apr. 8, 2011, pet. denied) (mem. op.). A trial court abuses its discretion if it acts arbitrarily or unreasonably, without reference to guiding rules or principles, or fails to analyze or apply the law correctly. *Iliff v. Iliff*, 339 S.W.3d 74, 78 (Tex. 2011).

To be enforceable, any agreement between parties touching on a pending suit must be in writing, signed, and entered into the court's record. Tex. R. Civ. P. 11. "Rule 11 agreements have long been recognized as an effective tool for finalizing settlements by objective manifestation so that the agreements do not themselves become sources of controversy."

---

[4] Although it was appellees who filed the motion to approve and enforce the Agreement, Francis asked for the same relief in his response to the motion and orally at the hearing.

7

*Innovative Vision Sols., LLC v. Kempner*, No. 01-20-00195-CV, 2022 WL 868130, at \*6 (Tex. App.—Houston [1st Dist.] Mar. 24, 2022, no pet.) (mem. op.) (internal citations omitted). A Rule 11 settlement agreement must contain all the essential terms of the settlement. *Padilla v. LaFrance*, 907 S.W.2d 454, 460 (Tex. 1995). Essential terms are those terms that the parties "would reasonably regard as vitally important elements of their bargain," including payment terms and release of claims. *Kempner*, 2022 WL 868130, at \*6 (citations omitted). Courts construe Rule 11 agreements as they do other contracts. *Id.*

A party has the right to revoke its consent to a Rule 11 agreement at any time before the rendition of judgment, *see Quintero v. Jim Walter Homes, Inc.*, 654 S.W.2d 442, 444 (Tex. 1983), and consent must exist at the time judgment is rendered, *see ExxonMobil Corp. v. Valence Operating Co.*, 174 S.W.3d 303, 309 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). While a court is not precluded from enforcing a Rule 11 agreement once it has been repudiated by one of the parties, an action to enforce a Rule 11 agreement to which consent has been withdrawn must be based on proper pleading and proof. *See Padilla*, 907 S.W.2d at 462; *Quintero*, 654 S.W.2d at 444. Thus, while the general rule is that a court has a "ministerial duty" to enforce a valid Rule 11 agreement by rendering judgment thereon, *see ExxonMobil Corp.*, 174 S.W.3d at 309, when one party to such agreement has revoked its consent thereto prior to rendition of judgment, the other party may then seek to enforce the agreement *only* under contract law and based upon proper pleading and proof, *see Padilla*, 907 S.W.2d at 461–62; *see also Quintero*, 654 S.W.2d at 444 (noting that court's power to render agreed judgment depends on "substance of the consent" at time judgment is rendered and that party has right to revoke consent at any time before rendition of judgment).

Such an action to enforce the Rule 11 agreement as a contract, rather than as an agreed judgment, requires full resolution of the surrounding facts and circumstances, and the validity of a settlement agreement may not be determined without proper pleadings. *Quintero*, 654 S.W.2d at 444 (reversing judgment of dismissal of case on joint motion to dismiss where one party no longer consented at time judgment was rendered and remanding cause without prejudice to other party's right to attempt to plead and prove enforceable settlement agreement). Thus, the party seeking enforcement of a Rule 11 agreement when the other party has revoked its consent "must pursue a separate breach-of-contract claim, which is subject to the normal rules of pleading and proof." *Mantas*, 925 S.W.2d at 658.

Here, although none of the parties expressly revoked their consent to the Agreement, we conclude that the trial court could reasonably have determined that the validity of the Agreement could not be determined without proper pleadings.[5] The Agreement required Francis to (1) close on the purchase of the home (to include paying the Settling Parties $225,000) within sixty days of the Agreement's execution or, failing that, (2) move out of the home within fifteen days after such date to allow the administrator to list the home for sale at $385,000. At the hearing, the parties expressed competing understandings of when they considered the Agreement "executed" and thus from which date Francis's closing deadline began running. Francis argued that his sixty-day closing deadline did not start running until January 29 at the earliest, when Joseph indicated his acceptance of the Agreement, and that he still had the right to purchase the home. Appellees, on the other hand, argued that the clock on the closing deadline began running on November 18 and that Francis's purchase option had expired. In this context, the

---

[5] At the hearing the trial court expressed its concern that there was no present agreement among the parties: "I'm not enforcing that agreement. The parties I don't believe ultimately had an agreement. And they're in dispute about the agreement so I'm not going to enforce it."

9

trial court reasonably could have determined that it would be improper to render judgment on the Agreement as a "ministerial duty." *See Kempner*, 2022 WL 868130, at *7–8 ("[W]hen . . . a settlement dispute arises while the trial court has jurisdiction over the underlying action, a claim to enforce the settlement agreement should be asserted through an amended pleading," and the trial court cannot resolve such dispute in a "ministerial" manner.); *Batjet, Inc. v. Jackson*, 161 S.W.3d 242, 245 (Tex. App.—Texarkana 2005, no pet.) (holding that, when settlement dispute arises, rendering judgment on settlement agreement alone would "deprive a party of the right to be confronted by appropriate pleadings, assert defenses, conduct discovery, and submit contested fact issues to a judge or jury"). In light of these circumstances, we hold that the trial court did not abuse its discretion in refusing to enforce the Agreement and render judgment thereon.[6] *See Mantas*, 925 S.W.2d at 659. Accordingly, we overrule Francis's first issue.

In his second issue, Francis argues that the trial court abused its discretion in denying his motion for new trial or to modify the judgment, which rulings we review for an abuse of discretion. *See In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) (motion for new trial); *Featherston v. Weller*, No. 03-05-00770-CV, 2009 WL 1896072, at *3 (Tex. App.—Austin July 3, 2009, no pet.) (mem. op.) (motion to modify).

Besides reiterating the arguments already discussed, Francis argues that a new trial is required "in the interests of justice" because appellees were judicially estopped from "benefitting from their own inconsistency" by seeking to first enforce the Agreement but then litigating the merits of their summary-judgment motion. He contends that appellees thereby induced him to "forego" developing the merits of his opposition to summary judgment

---

[6] The record does not reflect that Francis thereafter sought to enforce the Agreement through a breach-of-contract claim or similar action.

10

(including by submitting his own evidence). However, he does not explain how any of the elements of judicial estoppel were met. *See Harris Cnty. Hosp. Dist. v. Public Util. Comm'n*, 577 S.W.3d 370, 382–83 (Tex. App.—Austin 2019, pet. denied) (listing elements). We therefore conclude that the trial court did not abuse its discretion in denying the motion for new trial.

Francis next argues that the summary judgment "should have been modified" to reflect that it was not "final and appealable" as it stated because a future order admitting the will to probate would constitute the "final" judgment.[7] However, probate proceedings are an exception to the "one final judgment" rule, in that multiple judgments that are final for purposes of appeal can be rendered on certain discrete issues. *De Ayala v. Mackie*, 193 S.W.3d 575, 578 (Tex. 2006). In probate proceedings, to constitute a final, appealable order, an order need only "dispose[] of all parties or issues in a particular phase of the proceedings" and adjudicate a "substantial right." *Id.* at 578–79. The summary-judgment ruling ended Francis's challenges to the validity of the 2020 will and deed—and thus adjudicated a substantial right—such that the 2020 will could be admitted to probate; it was, thus, a final and appealable ruling. *See In re Estate of O'Neil*, No. 04-11-00586-CV, 2012 WL 3776490, at *3–4 (Tex. App.—San Antonio Aug. 31, 2012, no pet.) (mem. op.) (holding that summary judgment that finally adjudicated question of testamentary capacity conclusively disposed of one phase of proceedings and thus was final and appealable). Accordingly, the trial court did not abuse its discretion in denying Francis's motion to modify the judgment.

We overrule Francis's second issue.

---

[7] The record reflects that such order was signed, on June 15, 2021.

**CONCLUSION**

We affirm the trial court's orders denying Francis's motion to approve and enforce the Rule 11 Agreement, denying his motion for new trial or to modify the judgment, and granting appellees' summary-judgment motion.

_____

Thomas J. Baker, Justice

Before Justices Goodwin, Baker, and Triana

Affirmed

Filed:   October 21, 2022